# EXHIBIT B

**THAT WHICH IS CLAIMED IS:**

1. A sediment buster for water heater draining, the sediment buster comprising:

a main body defining a conduit and configured to be coupled to a drain outlet of a tank of the water heater and configured to transport a fluid into the drain outlet to break up sediment accumulated at the drain outlet inside the tank;

a first connector at an end of the main body and configured to be coupled to the drain outlet of the tank;

a second connector at an opposite end of the main body;

an inlet valve positioned on the main body and configured to receive the fluid to be sent into the drain outlet via the conduit and the first connector;

a shut-off valve positioned on the main body between the inlet valve and the second connector to selectively regulate the direction of flow of the fluid within the conduit from the inlet valve; and

a fluid supply device coupled to the inlet valve for selectively supplying the fluid to be sent into the drain outlet via the conduit and the first connector.

2. The sediment buster according to claim 1, wherein the fluid supply device comprises a fluid pump.

3. The sediment buster according to claim 1, wherein the fluid supply device comprises a compressed fluid supply.

4. The sediment buster according to claim 1, wherein the first connector comprises an internally threaded and rotatable female connector configured to be threadingly connected to a drain port at the drain outlet of the tank.

5. The sediment buster according to claim 1, wherein the first connector comprises an externally threaded connector configured to be threadingly connected to the drain outlet of the tank.

6. The sediment buster according to claim 5, wherein the main body is configured to be used as the drain port for the tank of the water heater.

7. A sediment buster for water heater draining, the sediment buster comprising:

a main body defining a conduit and configured to be coupled to a drain outlet of a tank of the water heater and configured to transport a fluid into the drain outlet to break up sediment accumulated at the drain outlet inside the tank;

a first end of the main body configured to be coupled to the drain outlet of the tank;

an inlet valve positioned on the main body and configured to be receive the fluid to be sent into the drain outlet via the conduit and the first connector; and

a shut-off valve positioned on the main body adjacent the inlet valve to direct flow of the fluid within the conduit from the inlet valve towards the drain outlet.

8. The sediment buster according to claim 7, further comprising a fluid supply device coupled to the inlet valve for selectively supplying the fluid to be sent into the drain outlet via the conduit and the first connector.

9. The sediment buster according to claim 8, wherein the fluid supply device comprises a fluid pump.

10. The sediment buster according to claim 8, wherein the fluid supply device comprises a compressed fluid supply.

11. The sediment buster according to claim 7, further comprising a connector at the first end of the main body and comprising an internally threaded and rotatable female connector configured to be threadingly connected to a drain port at the drain outlet of the tank.

12. The sediment buster according to claim 7, further comprising a connector at the first end of the main body and comprising an externally threaded connector configured to be threadingly connected to the drain outlet of the tank.

13. The sediment buster according to claim 12, wherein the main body is configured to be used as the drain port for the tank of the water heater.

14. A method of breaking up sediment accumulated at a drain outlet inside a tank, the method comprising:

operating a sediment buster that includes a main body defining a conduit coupled at a first end to a drain outlet of the tank and configured to transport a fluid;

coupling a fluid supply device to an inlet valve positioned on the main body and configured to receive the fluid to be sent into the drain outlet via the conduit;

closing a shut-off valve positioned on the main body adjacent the inlet valve to direct flow of the fluid within the conduit from the inlet valve;

operating a fluid supply device coupled to the inlet valve to supply the fluid into the drain outlet via the conduit to break up the sediment accumulated at the drain outlet inside the tank;

operating the fluid supply device coupled to the inlet valve to stop the supply of the fluid into the drain outlet; and

opening the shut-off valve to allow flow of fluid and sediment out a second end of the conduit.

15. The method according to claim 14, wherein the fluid supply device comprises a fluid pump.

16. The method according to claim 14, wherein the fluid supply device comprises a compressed fluid supply.

17. The method according to claim 14, wherein operating the sediment buster comprises connecting the first end of the main body using an internally threaded and rotatable female connector to a drain port at the drain outlet of the tank.

18. The method according to claim 14, wherein operating the sediment buster comprises connecting the first end of the main body using an externally threaded connector to the drain outlet of the tank.

19. The method according to claim 18, wherein the main body is used as the drain port for the tank.

20. The method according to claim 14, wherein the tank comprises a water heater tank.

PTO/AIA/122 (08-12)
Approved for use through 03/31/2021. OMB 0651-0035
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

# CHANGE OF CORRESPONDENCE ADDRESS
*Application*

Address to:
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

| | |
|---|---|
| Application Number | 16/374393 |
| Filing Date | 4.3.2019 |
| First Named Inventor | John Verhoff |
| Art Unit | 3762 |
| Examiner Name | Herzfeld |
| Attorney Docket Number | verhoff2019.0002 |

Please change the Correspondence Address for the above-identified patent application to:

☐ The address associated with Customer Number: ____________

**OR**

☒ Firm or Individual Name John Verhoff/Plumbing Nerds

Address 1502 Rail Head Blvd

City Napples | State Florida | Zip 34110

Country US

Telephone 239-215-2136 | Email john@plumbingnerds.com

This form cannot be used to change the data associated with a Customer Number. To change the data associated with an existing Customer Number use "Request for Customer Number Data Change" (PTO/SB/124).

I am the:

☒ Applicant

☐ Attorney or agent of record. Registration Number ____________________.

☐ Registered practitioner named in the application transmittal papers who acts in a representative capacity under 37 CFR 1.34. See 37 CFR 1.33(a)(1). Registration Number ____________________.

Signature /John Verhoff/

Typed or Printed Name John Verhoff

Date 8-26-2020 | Telephone 2392152136

NOTE: This form must be signed in accordance with 37 CFR 1.33. See 37 CFR 1.4(d) for signature requirements and certifications.
Submit multiple forms if more than one signature is required, see below*.

☐ *Total of 1 forms are submitted.

This collection of information is required by 37 CFR 1.33. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 3 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

# Privacy Act Statement

The **Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (*i.e.*, GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

PTO/AIA/122 (08-12)
Approved for use through 03/31/2021. OMB 0651-0035
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

# CHANGE OF CORRESPONDENCE ADDRESS
*Application*

Address to:
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

| | |
|---|---|
| Application Number | 16/374,393 |
| Filing Date | 4.3.2019 |
| First Named Inventor | John Verhoff |
| Art Unit | 3762 |
| Examiner Name | Herzfeld |
| Attorney Docket Number | verhoff2019.0002 |

Please change the Correspondence Address for the above-identified patent application to:

☐ The address associated with Customer Number: [ ]

**OR**

☒ Firm or Individual Name John Verhoff

Address 1502 Rail Head Blvd

| | | |
|---|---|---|
| City Naples | State Fl | Zip 34110 |
| Country US | | |
| Telephone 239-215-2136 | Email john@plumbingnerds.com | |

This form cannot be used to change the data associated with a Customer Number. To change the data associated with an existing Customer Number use "Request for Customer Number Data Change" (PTO/SB/124).

I am the:

☐ Applicant

☒ Attorney or agent of record. Registration Number 40455.

☒ Registered practitioner named in the application transmittal papers who acts in a representative capacity under 37 CFR 1.34. See 37 CFR 1.33(a)(1). Registration Number 40455.

| | |
|---|---|
| Signature | Paul J Ditmyer |
| Typed or Printed Name | Paul J Ditmyer |
| Date 8-22-2020 | Telephone 4044433603 |

NOTE: This form must be signed in accordance with 37 CFR 1.33. See 37 CFR 1.4(d) for signature requirements and certifications.
Submit multiple forms if more than one signature is required, see below*.

☐ *Total of 1 forms are submitted.

This collection of information is required by 37 CFR 1.33. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 3 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: **Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

# Privacy Act Statement

The **Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (*i.e.*, GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 16/374,393 | 04/03/2019 | John Verhoff | verhoff2019.0002 | 1073 |

7590 09/01/2020

John Verhoff/Plumbing Nerds
1502 Rail Head Blvd
Napples, FL 34110

| EXAMINER | |
|---|---|
| HERZFELD, NATHANIEL | |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3762 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 09/01/2020 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

| *Office Action Summary* | Application No. 16/374,393 | Applicant(s) Verhoff, John | |
|---|---|---|---|
| | Examiner NATHANIEL HERZFELD | Art Unit 3762 | AIA (FITF) Status Yes |

***-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --***

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE 3 MONTHS FROM THE MAILING DATE OF THIS COMMUNICATION.

- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☑ Responsive to communication(s) filed on 4/3/2019.
☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.

2a)☐ This action is **FINAL.** 2b) ☑ This action is non-final.

3)☑ An election was made by the applicant in response to a restriction requirement set forth during the interview on 18 August 2020; the restriction requirement and election have been incorporated into this action.

4)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims***

5) ☑ Claim(s) 1-20 is/are pending in the application.
5a) Of the above claim(s) 14-20 is/are withdrawn from consideration.

6) ☐ Claim(s) _____ is/are allowed.

7) ☑ Claim(s) 1-13 is/are rejected.

8) ☐ Claim(s) _____ is/are objected to.

9) ☐ Claim(s) _____ are subject to restriction and/or election requirement

* If any claims have been determined allowable, you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to **PPHfeedback@uspto.gov.**

**Application Papers**

10)☐ The specification is objected to by the Examiner.

11)☑ The drawing(s) filed on 4/3/2019 is/are: a)☑ accepted or b)☐ objected to by the Examiner.
Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

**Priority under 35 U.S.C. § 119**

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

**Certified copies:**

a)☐ All b)☐ Some** c)☐ None of the:

1.☐ Certified copies of the priority documents have been received.
2.☐ Certified copies of the priority documents have been received in Application No. _____.
3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

** See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☑ Notice of References Cited (PTO-892)

2) ☐ Information Disclosure Statement(s) (PTO/SB/08a and/or PTO/SB/08b)
Paper No(s)/Mail Date ______.

3) ☐ Interview Summary (PTO-413)
Paper No(s)/Mail Date ______.

4) ☐ Other: ______.

## 3DETAILED ACTION

### *Notice of Pre-AIA or AIA Status*

The present application, filed on or after March 16, 2013, is being examined under the first inventor to file provisions of the AIA.

### *Election/Restriction*

Restriction to one of the following inventions is required under 35 U.S.C. 121:

I. Claims 1-13, drawn to a sediment buster, classified in B02C19/18.

II. Claims 14-20, drawn to a method of breaking up sediment, classified in F24H9/0042.

The inventions are independent or distinct, each from the other because:

Inventions I and II are related as process and apparatus for its practice. The inventions are distinct if it can be shown that either: (1) the process as claimed can be practiced by another and materially different apparatus or by hand, or (2) the apparatus as claimed can be used to practice another and materially different process. (MPEP § 806.05(e)). In this case the apparatus does not require the steps of operating, coupling, closing and opening is the order and manner described in claim 14.

Restriction for examination purposes as indicated is proper because all the inventions listed in this action are independent or distinct for the reasons given above and there would be a serious search and/or examination burden if restriction were not required because one or more of the following reasons apply:

(A) the inventions have separate classifications.

(B) the inventions have a separate status in the art when they are classifiable together.

(C) the inventions require a different field of search.

**Applicant is advised that the reply to this requirement to be complete must include (i) an election of a invention to be examined** even though the requirement may be traversed (37 CFR 1.143) **and (ii) identification of the claims encompassing the elected invention**.

The election of an invention may be made with or without traverse. To reserve a right to petition, the election must be made with traverse. If the reply does not distinctly and specifically point out supposed errors in the restriction requirement, the election shall be treated as an election without traverse. Traversal must be presented at the time of election in order to be considered timely. Failure to timely traverse the requirement will result in the loss of right to petition under 37 CFR 1.144. If claims are added after the election, applicant must indicate which of these claims are readable upon the elected invention.

Should applicant traverse on the ground that the inventions are not patentably distinct, applicant should submit evidence or identify such evidence now of record showing the inventions to be obvious variants or clearly admit on the record that this is the case. In either instance, if the examiner finds one of the inventions unpatentable over the prior art, the evidence or admission may be used in a rejection under 35 U.S.C. 103 or pre-AIA 35 U.S.C. 103(a) of the other invention.

During a telephone conversation with Paul Ditmyer on 8/18/2020 a provisional election was made without traverse to prosecute invention I, claims 1-13. Affirmation of this election must be made by applicant in replying to this Office action. Claims 14-20 are withdrawn from further consideration by the examiner, 37 CFR 1.142(b), as being drawn to a non-elected invention.

The examiner has required restriction between product or apparatus claims and process claims. Where applicant elects claims directed to the product/apparatus, and all product/apparatus claims are subsequently found allowable, withdrawn process claims that include all the limitations of the allowable product/apparatus claims should be considered for rejoinder. All claims directed to a nonelected process invention must include all the limitations of an allowable product/apparatus claim for that process invention to be rejoined.

In the event of rejoinder, the requirement for restriction between the product/apparatus claims and the rejoined process claims will be withdrawn, and the rejoined process claims will be fully examined for patentability in accordance with 37 CFR 1.104. Thus, to be allowable, the rejoined claims must meet all criteria for patentability including the requirements of 35 U.S.C. 101, 102, 103 and 112. Until all claims to the elected product/apparatus are found allowable, an otherwise proper restriction requirement between product/apparatus claims and process claims may be maintained. Withdrawn process claims that are not commensurate in scope with an allowable product/apparatus claim will not be rejoined. See MPEP § 821.04. Additionally, in order for rejoinder to occur, applicant is advised that the process claims

should be amended during prosecution to require the limitations of the product/apparatus claims. **Failure to do so may result in no rejoinder.** Further, note that the prohibition against double patenting rejections of 35 U.S.C. 121 does not apply where the restriction requirement is withdrawn by the examiner before the patent issues. See MPEP § 804.01.

### *Claim Rejections - 35 USC § 103*

The following is a quotation of 35 U.S.C. 103 which forms the basis for all obviousness rejections set forth in this Office action:

> A patent for a claimed invention may not be obtained, notwithstanding that the claimed invention is not identically disclosed as set forth in section 102, if the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious before the effective filing date of the claimed invention to a person having ordinary skill in the art to which the claimed invention pertains. Patentability shall not be negated by the manner in which the invention was made.

Claims 1, 4-8 and 11-13 are rejected under 35 U.S.C. 103 as being unpatentable over Palmer (US Patent No. 6,041,611) in view of Nugent (US PG Pub. No. 2011/0308628).

Regarding claims 1 and 7-8:

Palmer teaches a sediment buster for condensate draining, the sediment buster comprising: a main body (2) defining a conduit and configured to be coupled to a drain outlet of a evaporator and configured to transport a fluid into the drain outlet (through 24/16) to break up sediment accumulated at the drain outlet inside the evaporator (see column 1, lines 27-29 and column 1, lines 48-51); a first connector (by 6) at an end of the main body and configured to be coupled to the drain outlet of the evaporator; a second connector (8) at an

opposite end of the main body; an inlet valve (16) positioned on the main body and configured to receive the fluid to be sent into the drain outlet via the conduit and the first connector; a shut-off valve (20) positioned on the main body between the inlet valve and the second connector to selectively regulate the direction of flow of fluid within the conduit from the inlet valve (see column 7, lines 7-37); and a fluid supply device (device going to 24) coupled to the inlet valve (16) for selectively supplying the fluid to be sent into the drain outlet via the conduit and the first connector (see figure 1).

Palmer fails to disclose the sediment buster is for a water heater tank drain outlet.

Nugent teaches a sediment buster similar to Palmer including the sediment buster being in use for a water heater tank drain outlet (see at least abstract).

It would have been obvious to one having ordinary skill in the art before the effective filing date of the claimed invention to modify Palmer with the teachings of Nugent to use the sediment buster of Palmer in a water heater application since Nugent teaches a need for a sediment buster within a drain valve of a water heater tank.

Regarding claims 4-5 and 11-12:

Palmer modified above teaches the first connector comprises a connector configured to be connected to a drain port at the drain outlet of the tank (see paragraph 30 of Nugent as modified above).

Palmer modified above is silent as to whether the connector is an externally or internally threaded connector that is threadingly connected to a drain port or drain outlet of the tank. However the examiner notes that it would have been obvious to one having ordinary skill in the art before the effective filing date of the claimed invention to have the connector be a threaded connector, either an internally or externally threaded connector, since such a connection is a when known art equivalent of connectors known within water heater plumbing systems to be interchangeable.

Regarding claim 6 and 13:

Palmer modified above teaches the main body is configured to be used as the drain port for the tank of the water heater (see figure 1 of Palmer where the main body is the outlet from the evaporator, or paragraph 30 of Nugent as modified above).

Claims 2-3 and 9-10 are rejected under 35 U.S.C. 103 as being unpatentable over Palmer in view of Nugent as applied to claims 1 and 7 respectively above, and further in view of Pearson (US Patent No. 8,646,474).

Regarding claims 2-3 and 9-10:

Palmer modified above teaches all of the above except the fluid supply device comprises a fluid pump or a compressed fluid supply.

Pearson teaches a sediment buster similar to Palmer including using a fluid pump or a compressed fluid supply to power the device (see column 10, lines 1-56.

It would have been obvious to one having ordinary skill in the art before the effective filing date of the claimed invention to use a fluid pump or a compressed fluid supply to remove the sediment since such means are all art equivalents well known throughout the art to be interchangeable.

## *Conclusion*

The prior art made of record and not relied upon is considered pertinent to applicant's disclosure.

Mattich (US Patent No. 2,820,467)

Ludwig et al (US Patent No. 5,494,527)

Rau (US Patent No. 5,249,311)

Gallo (US Patent No. 5,996,597)

Santore (US Patent No. 4,063,317)

Yurdin (US Patent No. 3,156,584)

Kimbrough et al (US PG Pub. No. 2006/0042292)

McClarren (US Patent No. 9,975,152)

Herren (US Patent No. 6,442,956)

Any inquiry concerning this communication or earlier communications from the examiner should be directed to NATHANIEL HERZFELD whose telephone number is (571)272-5899. The examiner can normally be reached on Monday-Friday 8-5 EST.

Examiner interviews are available via telephone, in-person, and video conferencing using a USPTO supplied web-based collaboration tool. To schedule an interview, applicant is encouraged to use the USPTO Automated Interview Request (AIR) at http://www.uspto.gov/interviewpractice.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, Steve McAllister can be reached on 571-272-6785. The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

Information regarding the status of an application may be obtained from the Patent Application Information Retrieval (PAIR) system. Status information for published applications may be obtained from either Private PAIR or Public PAIR. Status information for unpublished applications is available through Private PAIR only. For more information about the PAIR system, see https://ppair-my.uspto.gov/pair/PrivatePair. Should you have questions on access to the Private PAIR system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a USPTO Customer Service Representative or access to the automated information system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

NATHANIEL HERZFELD

Primary Examiner
Art Unit 3762

/NATHANIEL HERZFELD/
Primary Examiner, Art Unit 3762

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | |
|---|---|---|
| In re Patent Application of: | ) | Examiner: Herzfield, Nathaniel |
| | ) | |
| **John Verhoff** | ) | Art Unit: 3762 |
| | ) | |
| Serial No.: **16/374,393** | ) | Attorney Docket No.: **Verhoff2019.0002** |
| | ) | |
| For: **SEDIMENT BUSTER FOR WATER** | ) | Confirmation No.: **1073** |
| **CONTAINER FLUSHING SYSTEM** | ) | |
| **INCLUDING SEDIMENT SEPARATOR** | ) | |
| **AND ASSOCIATED METHODS** | ) | |
| | ) | |

## RESPONSE TO OFFICE ACTION

November 2, 2020

U.S. Patent and Trademark Office
**E-FILING**
Randolph Building
401 Dulany Street
Alexandria, VA 22314

Sir:

In response to the Office Action dated September 1, 2020, Applicant submits the following:

**A Listing of the Claims** which begins on page 2 of this paper; and

**Remarks/Arguments** which begin on page 6 of this paper.

In re Patent Application of:
**John Verhoff**
Serial No.: **16/374,393**
Filed: April 3, 2019
______________________/

## Claims

This listing of claims replaces all prior versions, and listings, of claims in the application:

<u>Listing of Claims</u>

1. (Currently amended) A sediment buster <u>tool</u> for water heater draining, the sediment buster <u>tool</u> comprising:

a main body defining a conduit and configured to be coupled to a drain outlet of a tank of the water heater and configured to transport a ~~fluid~~ <u>gas</u> into the drain outlet to break up sediment accumulated at the drain outlet inside the tank;

a first connector<u>, comprising an internally threaded and rotatable female connector,</u> at an end of the main body and configured to be coupled to <u>an externally threaded drain port at</u> the drain outlet of the tank;

a second connector at an opposite end of the main body;

an inlet valve positioned on the main body and configured to receive the ~~fluid~~ <u>gas</u> to be sent into the drain outlet via the conduit and the first connector;

a shut-off valve positioned on the main body between the inlet valve and the second connector to selectively regulate the direction of flow of the fluid within the conduit from the inlet valve; and

a ~~fluid supply device~~ <u>compressed gas cartridge</u> coupled to the inlet valve for selectively supplying ~~the fluid to be sent~~ <u>gas</u> into the drain outlet via the conduit and the first connector.

2. (Cancelled).

3. (Cancelled).

4. (Cancelled).

5. (Cancelled).

6. (Currently amended) The sediment buster according to claim <u>1</u> ~~5~~, wherein the main body is configured to be used as the drain port for the tank of the water heater.

In re Patent Application of:
**John Verhoff**
Serial No.: **16/374,393**
Filed: April 3, 2019
_______________________/

7. (Cancelled).

8. (Cancelled).

9. (Cancelled).

10. (Cancelled).

11. (Cancelled).

12. (Cancelled).

13. (Cancelled).

14. (Currently amended) A method of breaking up sediment accumulated at a drain outlet inside a water heater tank, the method comprising:

operating a sediment buster tool that includes a main body defining a conduit coupled at a first end to a drain outlet of the water heater tank and configured to transport a ~~fluid~~ gas, including connecting the first end of the main body using an internally threaded and rotatable female connector to a drain port at the drain outlet of the water heater tank;

coupling a ~~fluid supply device~~ compressed gas cartridge to an inlet valve positioned on the main body and configured to receive the ~~fluid~~ gas to be sent into the drain outlet via the conduit,;

closing a shut-off valve positioned on the main body adjacent the inlet valve to direct flow of the ~~fluid~~ gas within the conduit from the inlet valve;

operating ~~a fluid supply device~~ the compressed gas cartridge coupled to the inlet valve to supply the ~~fluid~~ gas into the drain outlet via the conduit to break up the sediment accumulated at the drain outlet inside the water heater tank;

operating the ~~fluid supply device~~ compressed gas cartridge coupled to the inlet valve to stop the supply of the ~~fluid~~ gas into the drain outlet; and

opening the shut-off valve to allow flow of fluid and sediment out a second end of the conduit.

15. (Cancelled).

16. (Cancelled).

17. (Cancelled).

18. (Cancelled).

19. (Currently amended) The method according to claim 14 ~~18~~, wherein the main body is used as the drain port for the water heater tank.

20. (Cancelled).

In re Patent Application of:
**John Verhoff**
Serial No.: **16/374,393**
Filed: April 3, 2019
______________________/

## REMARKS/ARGUMENTS

The Office Action dated September 1, 2020 and the references cited therein have been carefully studied and reviewed. Applicant thanks the Examiner for the careful and thorough examination of the present application, and for the courtesy extended during the telephone interview on November 2, 2020. The arguments supporting patentability of the claimed invention are included hereinbelow.

Although the present communication may include alterations to the application or claims, or characterizations of claim scope or referenced art, Applicant is not conceding in this application that previously pending claims are not patentable over the cited references. Rather, any alterations or characterizations are being made to facilitate expeditious prosecution of this application.

For the sake of conciseness and clarity, Applicant may not have addressed every assertion or rejection made in the Office action, particularly where Applicant has presented amendments or arguments that Applicant believes renders such assertions/rejections moot. Therefore, Applicant's silence regarding any such assertions or rejections does not constitute an admission or acquiescence regarding such assertions/rejections or a waiver of any argument relating to such assertions/rejections. Applicant reserves the right to challenge later any rejection or any factual or legal assertion made by the Office in relation to the present application. Applicant's silence regarding any of the Official Notice taken by Examiner does not constituted an admission or acquiescence regarding such assertions or a waiver of any argument relating to such assertions.

Applicant reserves the right to pursue later any previously pending or other broader or narrower claims that capture any subject matter supported by the present disclosure, including subject matter found to be specifically disclaimed herein or by any prior prosecution.

Accordingly, reviewers of this or any parent, child or related prosecution history shall not reasonably infer that Applicant has made any disclaimers or disavowals of any subject matter supported by the present application.

Regarding the telephone interview of November 2, 2020 discussing the Restriction Requirement with respect to invention I, Claims 1-14, and invention II, Claims 14-20, Applicant's representative now confirms election with traverse of invention I. Applicant maintains that the search and examination of the apparatus and method would not require any additional burden on the

Examiner. If the restriction requirement is maintained, rejoinder of the non-elected claims is requested upon allowance of the elected invention.

Alternatively, Applicant reserves the right to pursue the claims directed to invention II in a related application.

By this amendment, independent Claims 1 and 14 are amended to include various features of dependent Claims 2-5, 15-18, and 20 which are canceled for consistency.

Claims 1, 6, 14 and 19 remain pending in the application. In view of the following representations, favorable reconsideration is respectfully requested.

<u>The Prior Art Rejections</u>

Independent claim 1 is rejected under 35 U.S.C. §103(a) as being unpatentable over Palmer and Nugent.

<u>Patentability of the Claims</u>

As the Examiner is aware, to establish a prima facie case of obviousness, the prior art references must teach all the claim features or Examiner must present a convincing line of reasoning as to why the artisan would have found the claimed invention to have been obvious in light of the teachings of the references. A rejection on obviousness grounds under 35 U.S.C. §103 cannot be sustained by mere conclusory statements: instead there must be some articulated reasoning with some rational underpinning to support the legal conclusion of obviousness. See M.P.E.P. § 2141 citing In re Kahn, 441 F.3d 977, 988, 78 USPQ2d 1329, 1336 (Fed. Cir. 2006), and KSR International Co. v. Teleflex Inc., 550 U.S. at 418.

Applicant contends that Claim 1 clearly defines over the cited references, and in view of the following remarks, Examiner is requested to withdraw the rejection under 35 U.S.C. §103.

Independent claim 1, as amended, is directed to a sediment buster tool for water heater draining. The sediment buster tool includes a main body defining a conduit and configured to be coupled to a drain outlet of a tank of the water heater and configured to transport a gas into the drain outlet to break up sediment accumulated at the drain outlet inside the tank. A first connector, comprising an internally threaded and rotatable female connector, at an end of the main body is configured to be coupled to an externally threaded drain port at the drain outlet of the tank, and a

second connector is at an opposite end of the main body. An inlet valve is positioned on the main body and configured to receive the gas to be sent into the drain outlet via the conduit and the first connector. A shut-off valve is positioned on the main body between the inlet valve and the second connector to selectively regulate the direction of flow of the fluid within the conduit from the inlet valve. A compressed gas cartridge is coupled to the inlet valve for selectively supplying gas into the drain outlet via the conduit and the first connector.

It is at least these combinations of features which are not fairly taught in the cited references and which patentably define over the cited references.

Referring to FIG. 1 of Palmer (reproduced below for convenience) "the apparatus …is a manifold 2 that is operatively placed in line with a condensate drain line, with the condensate drain line extending from a drain pan."




*Fig. 1*

Notably, in Palmer, the manifold 2 is integrated into an air conditioner condensate drain line. The manifold 2 is not a tool that is connectable and disconnectable to a water heater drain outlet. There is no fluid supply, and no compressed gas cartridge as is now claimed.

As acknowledged by the Examiner on page of the Office Action, Palmer fails to disclose that the manifold is for use with a water heater drain outlet as claimed. On page 7 of the Office Action, the Examiner also acknowledged that Palmer fails to teach the use of an internally threaded rotatable connector and a compressed fluid supply.

The Nugent reference is directed to a drain hose for drainage of a water heater, the hose comprising a drainage tube for drainage of water from the water heater, and an agitator for agitating water within the drain hose. Applicant points out that the Nugent device includes an agitator (or squeeze bulb) in-line with a drain hose, and utilizes water from the drain reversed back into the drain.

There is no fluid supply in the device of Nugent, and certainly no compressed gas cartridge as is now claimed.

To emphasize these distinctions, independent Claim 1 is now amended to recite that the first connector comprises an internally threaded and rotatable female connector, at an end of the main body is configured to be coupled to an externally threaded drain port at the drain outlet of the tank. Also, the claim now recites that a compressed gas cartridge is coupled to the inlet valve for selectively supplying gas into the drain outlet via the conduit and the first connector.

Indeed, the portable and connectable tool of the present embodiment can be operated to selectively control the direction of the flow of gas within the housing from the compressed gas cartridge. In this way, turning off the shut-off valve results in the gas being directly sent through the housing and out the connector to the drain port of the water heater via a hose, for example, as illustrated in FIGS. 2 and 4 of the present application. The gas from the compressed gas cartridge forcefully enters the drain port of the water heater to bust up the sediment, so that draining or circulation may be tried again.

Pearson was cited by the Examiner to show the use of a fluid pump with a condensate drain line. It is sufficient to note that Pearson does not teach the use of a compressed gas cartridge in a portable plumbing tool.

Thus, Applicant maintains that none of the references to Palmer, Nugent and Pearson teach that a first connector comprises an internally threaded and rotatable female connector, at an end of the main body to be coupled to an externally threaded drain port at the drain outlet of the tank, or a compressed gas cartridge being coupled to the inlet valve for selectively supplying gas into the drain outlet via the conduit and the first connector, as claimed. As such, any hypothetical combination of

teachings in the cited references, even if proper, cannot result in the features of the claimed embodiment as set forth in independent Claim 1.

Accordingly, for at least the reasons presented above, Applicant maintains that there is simply no teaching in the cited references, or offered by the Examiner, to provide the combination of features as set forth in independent Claim 1, and the respective dependent claim. Thus, the rejections thereof under 35 U.S.C. §103(a) are improper and should be withdrawn.

For at least the reasons presented above, it is submitted that the claims are patentable over the prior art.

## CONCLUSION

In view of the foregoing remarks, it is respectfully submitted that the present application is in condition for allowance. An early notice thereof is earnestly solicited. If, after reviewing this Response, there are any remaining informalities which need to be resolved before the application can be passed to issue, the Examiner is invited and respectfully requested to contact the undersigned by telephone to resolve such informalities.

Respectfully submitted,

Paul J. Ditmyer

PAUL J. DITMYER
Reg. No. 40,455
Attorney for Applicant
Tel: 407-443-3603

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 16/374,393 | 04/03/2019 | John Verhoff | verhoff2019.0002 | 1073 |

7590 11/04/2020

John Verhoff/Plumbing Nerds
1502 Rail Head Blvd
Napples, FL 34110

| EXAMINER | |
|---|---|
| HERZFELD, NATHANIEL | |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3762 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 11/04/2020 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

| *Applicant-Initiated Interview Summary* | **Application No.**<br>16/374,393 | **Applicant(s)**<br>Verhoff, John | |
|---|---|---|---|
| | **Examiner**<br>NATHANIEL HERZFELD | **Art Unit**<br>3762 | **AIA (FITF) Status**<br>Yes |

All participants (applicant, applicants representative, PTO personnel):

(1) NATHANIEL . HERZFELD. (3) _____.

(2) PAUL DITMYER. (4) _____.

Date of Interview: 02 November 2020.

Type: ☑ Telephonic ☐ Video Conference
☐ Personal [copy given to: ☐ applicant ☐ applicant's representative]

Exhibit shown or demonstration conducted: ☐ Yes ☑ No.
If Yes, brief description: _____.

Issues Discussed ☐101 ☐112 ☐102 ☑103 ☐Others
(For each of the checked box(es) above, please describe below the issue and detailed description of the discussion)

Claim(s) discussed: 1.

Identification of prior art discussed: Palmer, Nugent and Gallo (US PAtent No. 5,803,101).

Substance of Interview
(For each issue discussed, provide a detailed description and indicate if agreement was reached. Some topics may include: identification or clarification of a reference or a portion thereof, claim interpretation, proposed amendments, arguments of any applied references etc...)

Applicant called to discuss the application specifically that the present invention is made to be attached on the fly used and unattached without disassembling the rest of the water heater and which used a removable cartridge. While Palmer is required to be attached throughout it's use. The examiner agreed and pointed applicant towards the Gallo reference which also teaches a portable drain cleaning apparatus with a removable cartridge. No agreement was made on patentability, further search and consideration is required upon formal submission of all amendments..

**Applicant recordation instructions:** The formal written reply to the last Office action must include the substance of the interview. (See MPEP section 713.04). If a reply to the last Office action has already been filed, applicant is given a non-extendable period of the longer of one month or thirty days from this interview date, or the mailing date of this interview summary form, whichever is later, to file a statement of the substance of the interview.

**Examiner recordation instructions**: Examiners must summarize the substance of any interview of record. A complete and proper recordation of the substance of an interview should include the items listed in MPEP 713.04 for complete and proper recordation including the identification of the general thrust of each argument or issue discussed, a general indication of any other pertinent matters discussed regarding patentability and the general results or outcome of the interview, to include an indication as to whether or not agreement was reached on the issues raised.

☐ Attachment

/NATHANIEL HERZFELD/
Primary Examiner, Art Unit 3762

# Summary of Record of Interview Requirements

**Manual of Patent Examining Procedure (MPEP), Section 713.04, Substance of Interview Must be Made of Record**
A complete written statement as to the substance of any face-to-face, video conference, or telephone interview with regard to an application must be made of record in the application whether or not an agreement with the examiner was reached at the interview.

**Title 37 Code of Federal Regulations (CFR) 1.133 Interviews**
Paragraph (b)

In every instance where reconsideration is requested in view of an interview with an examiner, a complete written statement of the reasons presented at the interview as warranting favorable action must be filed by the applicant. An interview does not remove the necessity for reply to Office action as specified in §§ 1.111, 1.135. (35 U.S.C. 132)

37 CFR §1.2 Business to be transacted in writing.
All business with the Patent or Trademark Office should be transacted in writing. The personal attendance of applicants or their attorneys or agents at the Patent and Trademark Office is unnecessary. The action of the Patent and Trademark Office will be based exclusively on the written record in the Office. No attention will be paid to any alleged oral promise, stipulation, or understanding in relation to which there is disagreement or doubt.

---

The action of the Patent and Trademark Office cannot be based exclusively on the written record in the Office if that record is itself incomplete through the failure to record the substance of interviews.
It is the responsibility of the applicant or the attorney or agent to make the substance of an interview of record in the application file, unless the examiner indicates he or she will do so. It is the examiners responsibility to see that such a record is made and to correct material inaccuracies which bear directly on the question of patentability.

Examiners must complete an Interview Summary Form for each interview held where a matter of substance has been discussed during the interview by checking the appropriate boxes and filling in the blanks. Discussions regarding only procedural matters, directed solely to restriction requirements for which interview recordation is otherwise provided for in Section 812.01 of the Manual of Patent Examining Procedure, or pointing out typographical errors or unreadable script in Office actions or the like, are excluded from the interview recordation procedures below. Where the substance of an interview is completely recorded in an Examiners Amendment, no separate Interview Summary Record is required.

The Interview Summary Form shall be given an appropriate Paper No., placed in the right hand portion of the file, and listed on the "Contents" section of the file wrapper. In a personal interview, a duplicate of the Form is given to the applicant (or attorney or agent) at the conclusion of the interview. In the case of a telephone or video-conference interview, the copy is mailed to the applicants correspondence address either with or prior to the next official communication. If additional correspondence from the examiner is not likely before an allowance or if other circumstances dictate, the Form should be mailed promptly after the interview rather than with the next official communication.

The Form provides for recordation of the following information:
- Application Number (Series Code and Serial Number)
- Name of applicant
- Name of examiner
- Date of interview
- Type of interview (telephonic, video-conference, or personal)
- Name of participant(s) (applicant, attorney or agent, examiner, other PTO personnel, etc.)
- An indication whether or not an exhibit was shown or a demonstration conducted
- An identification of the specific prior art discussed
- An indication whether an agreement was reached and if so, a description of the general nature of the agreement (may be by attachment of a copy of amendments or claims agreed as being allowable). Note: Agreement as to allowability is tentative and does not restrict further action by the examiner to the contrary.
- The signature of the examiner who conducted the interview (if Form is not an attachment to a signed Office action)

It is desirable that the examiner orally remind the applicant of his or her obligation to record the substance of the interview of each case. It should be noted, however, that the Interview Summary Form will not normally be considered a complete and proper recordation of the interview unless it includes, or is supplemented by the applicant or the examiner to include, all of the applicable items required below concerning the substance of the interview.
A complete and proper recordation of the substance of any interview should include at least the following applicable items:
1) A brief description of the nature of any exhibit shown or any demonstration conducted,-
2) an identification of the claims discussed,
3) an identification of the specific prior art discussed,
4) an identification of the principal proposed amendments of a substantive nature discussed, unless these are already described on the Interview Summary Form completed by the Examiner,
5) a brief identification of the general thrust of the principal arguments presented to the examiner,
(The identification of arguments need not be lengthy or elaborate. A verbatim or highly detailed description of the arguments is not required. The identification of the arguments is sufficient if the general nature or thrust of the principal arguments made to the examiner can be understood in the context of the application file. Of course, the applicant may desire to emphasize and fully describe those arguments which he or she feels were or might be persuasive to the examiner.)
6) a general indication of any other pertinent matters discussed, and
7) if appropriate, the general results or outcome of the interview unless already described in the Interview Summary Form completed by the examiner.

Examiners are expected to carefully review the applicants record of the substance of an interview. If the record is not complete and accurate, the examiner will give the applicant an extendable one month time period to correct the record.

**Examiner to Check for Accuracy**

If the claims are allowable for other reasons of record, the examiner should send a letter setting forth the examiners version of the statement attributed to him or her. If the record is complete and accurate, the examiner should place the indication, Interview Record OK on the paper recording the substance of the interview along with the date and the examiners initials.

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 16/374,393 | 04/03/2019 | John Verhoff | verhoff2019.0002 | 1073 |

7590 02/02/2021

John Verhoff/Plumbing Nerds
1502 Rail Head Blvd
Napples, FL 34110

| EXAMINER | |
|---|---|
| HERZFELD, NATHANIEL | |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3762 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 02/02/2021 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

| *Office Action Summary* | Application No. 16/374,393 | Applicant(s) Verhoff, John | |
|---|---|---|---|
| | **Examiner** NATHANIEL HERZFELD | **Art Unit** 3762 | **AIA (FITF) Status** Yes |

***-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --***

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE 3 MONTHS FROM THE MAILING DATE OF THIS COMMUNICATION.

- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☑ Responsive to communication(s) filed on 11/02/2020.
☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.

2a)☑ This action is **FINAL.** 2b) ☐ This action is non-final.

3)☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

4)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims***

5) ☑ Claim(s) 1,6,14 and 19 is/are pending in the application.
5a) Of the above claim(s) 14 and 19 is/are withdrawn from consideration.

6) ☐ Claim(s) _____ is/are allowed.

7) ☑ Claim(s) 1 and 6 is/are rejected.

8) ☐ Claim(s) _____ is/are objected to.

9) ☐ Claim(s) _____ are subject to restriction and/or election requirement

* If any claims have been determined allowable, you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to **PPHfeedback@uspto.gov.**

**Application Papers**

10)☐ The specification is objected to by the Examiner.

11)☐ The drawing(s) filed on _____ is/are: a)☐ accepted or b)☐ objected to by the Examiner.
Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

**Priority under 35 U.S.C. § 119**

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
**Certified copies:**
a)☐ All b)☐ Some** c)☐ None of the:
1.☐ Certified copies of the priority documents have been received.
2.☐ Certified copies of the priority documents have been received in Application No. _____.
3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

** See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☑ Notice of References Cited (PTO-892)

2) ☐ Information Disclosure Statement(s) (PTO/SB/08a and/or PTO/SB/08b)
Paper No(s)/Mail Date ______.

3) ☐ Interview Summary (PTO-413)
Paper No(s)/Mail Date ______.

4) ☐ Other: ______.

## DETAILED ACTION

### *Notice of Pre-AIA or AIA Status*

The present application, filed on or after March 16, 2013, is being examined under the first inventor to file provisions of the AIA.

### *Response to Amendment*

The arguments and amendments filed 11/2/2020 have been received and fully considered. Claims 1, 6, 14 and 19 are pending. Claims 1, 6, 14 and 19 are amended. Claims 14 and 19 are withdrawn.

### *Response to Arguments*

Applicant’s arguments with respect to the claims have been considered but are moot because the new ground of rejection does not rely on any reference applied in the prior rejection of record for any teaching or matter specifically challenged in the argument.

### *Claim Rejections - 35 USC § 103*

The following is a quotation of 35 U.S.C. 103 which forms the basis for all obviousness rejections set forth in this Office action:

> A patent for a claimed invention may not be obtained, notwithstanding that the claimed invention is not identically disclosed as set forth in section 102, if the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious before the effective filing date of the claimed invention to a person having ordinary skill in the art to which the claimed invention pertains. Patentability shall not be negated by the manner in which the invention was made.

Claims 1 and 6 are rejected under 35 U.S.C. 103 as being unpatentable over Palmer (US Patent No. 6,041,611) in view of Nugent (US PG Pub. No. 2011/0308628), Coogle (US Patent No. 6,708,717) and Pearson (US Patent No. 8,646,474).

Regarding claims 1 and 7-8:

Palmer teaches a sediment buster for condensate draining, the sediment buster comprising: a main body (2) defining a conduit and configured to be coupled to a drain outlet of a evaporator and configured to transport a fluid into the drain outlet (through 24/16) to break up sediment accumulated at the drain outlet inside the evaporator (see column 1, lines 27-29 and column 1, lines 48-51); a first connector (by 6) at an end of the main body and configured to be coupled to the drain outlet of the evaporator; a second connector (8) at an opposite end of the main body; an inlet valve (16) positioned on the main body and configured to receive the fluid to be sent into the drain outlet via the conduit and the first connector; a shut-off valve (20) positioned on the main body between the inlet valve and the second connector to selectively regulate the direction of flow of fluid within the conduit from the inlet valve (see column 7, lines 7-37); and a fluid supply device (device going to 24) coupled to the inlet valve (16) for selectively supplying the fluid to be sent into the drain outlet via the conduit and the first connector (see figure 1).

Palmer fails to disclose the sediment buster is for a water heater tank drain outlet, the connectors comprise threaded connectors and the fluid supply device comprises a fluid pump or a compressed fluid supply.

Nugent teaches a sediment buster similar to Palmer including the sediment buster being in use for a water heater tank drain outlet (see at least abstract).

It would have been obvious to one having ordinary skill in the art before the effective filing date of the claimed invention to modify Palmer with the teachings of Nugent to use the sediment buster of Palmer in a water heater application since Nugent teaches a need for a sediment buster within a drain valve of a water heater tank.

Coogle teaches a flushing line (20) for drainage pipes similar to Palmer including the ends of the sediment buster (10) connected to the drain lines (L) using threaded connectors (90).

It would have been obvious to one having ordinary skill in the art before the effective filing date of the claimed invention to modify Palmer with the teachings of Coogle to include allowing the sediment buster to be attached to the drain line in order to make the sediment buster removable.

Pearson teaches a sediment buster similar to Palmer including using a fluid pump or a compressed fluid supply to power the device (see column 10, lines 1-56.

It would have been obvious to one having ordinary skill in the art before the effective filing date of the claimed invention to use a fluid pump or a compressed fluid supply to remove the sediment since such means are all art equivalents well known throughout the art to be interchangeable.

Regarding claim 6:

Palmer modified above teaches the main body is configured to be used as the drain port for the tank of the water heater (see figure 1 of Palmer where the main body is the outlet from the evaporator, or paragraph 30 of Nugent as modified above).

### ***Conclusion***

Applicant's amendment necessitated the new ground(s) of rejection presented in this Office action. Accordingly, **THIS ACTION IS MADE FINAL**. See MPEP § 706.07(a). Applicant is reminded of the extension of time policy as set forth in 37 CFR 1.136(a).

A shortened statutory period for reply to this final action is set to expire THREE MONTHS from the mailing date of this action. In the event a first reply is filed within TWO MONTHS of the mailing date of this final action and the advisory action is not mailed until after the end of the THREE-MONTH shortened statutory period, then the shortened statutory period will expire on the date the advisory action is mailed, and any extension fee pursuant to 37 CFR 1.136(a) will be calculated from the mailing date of the advisory action. In no event, however, will the statutory period for reply expire later than SIX MONTHS from the date of this final action.

Any inquiry concerning this communication or earlier communications from the examiner should be directed to NATHANIEL HERZFELD whose telephone number is (571)272-5899. The examiner can normally be reached on Monday-Friday 8-5 EST.

Examiner interviews are available via telephone, in-person, and video conferencing using a USPTO supplied web-based collaboration tool. To schedule an interview, applicant is encouraged to use the USPTO Automated Interview Request (AIR) at http://www.uspto.gov/interviewpractice.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, Steve McAllister can be reached on 571-272-6785. The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

Information regarding the status of an application may be obtained from the Patent Application Information Retrieval (PAIR) system. Status information for published applications may be obtained from either Private PAIR or Public PAIR. Status information for unpublished applications is available through Private PAIR only. For more information about the PAIR system, see https://ppair-my.uspto.gov/pair/PrivatePair. Should you have questions on access to the Private PAIR system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a USPTO Customer Service Representative or access to the automated information system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

NATHANIEL HERZFELD
Primary Examiner
Art Unit 3762

/NATHANIEL HERZFELD/
Primary Examiner, Art Unit 3762

| *Applicant-Initiated Interview Summary* | Application No.<br>16/374,393 | Applicant(s)<br>Verhoff, John | | |
|---|---|---|---|---|
| | Examiner<br>NATHANIEL HERZFELD | Art Unit<br>3762 | AIA (First Inventor to File) Status<br>Yes | Page<br>1 of 1 |

| **All Participants** (applicant, applicants representative, PTO personnel) | **Title** | **Type** |
|---|---|---|
| NATHANIEL HERZFELD | Primary Examiner | Telephonic |
| PAUL DITMYER | Attorney of Record | |

**Date of Interview:** 03 May 2021

**Issues Discussed:**

**35 U.S.C. 103**

The combination of Palmer with Nugent, specifically that Palmer is used in not pressurized systems while Nugent is used in a pressurized system and it is not clear if Palmer would function in the same manner as Nugent in a pressurized system.

/NATHANIEL HERZFELD/
Primary Examiner, Art Unit 3762

**Applicant is reminded that a complete written statement as to the substance of the interview must be made of record in the application file. It is the applicants responsibility to provide the written statement, unless the interview was initiated by the Examiner and the Examiner has indicated that a written summary will be provided. See MPEP 713.04**
Please further see:
MPEP 713.04
Title 37 Code of Federal Regulations (CFR) § 1.133 Interviews, paragraph (b)
37 CFR § 1.2 Business to be transacted in writing

**Applicant recordation instructions:** The formal written reply to the last Office action must include the substance of the interview. (See MPEP section 713.04). If a reply to the last Office action has already been filed, applicant is given a non-extendable period of the longer of one month or thirty days from this interview date, or the mailing date of this interview summary form, whichever is later, to file a statement of the substance of the interview.

**Examiner recordation instructions:** Examiners must summarize the substance of any interview of record. A complete and proper recordation of the substance of an interview should include the items listed in MPEP 713.04 for complete and proper recordation including the identification of the general thrust of each argument or issue discussed, a general indication of any other pertinent matters discussed regarding patentability and the general results or outcome of the interview, to include an indication as to whether or not agreement was reached on the issues raised.

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | | |
|---|---|---|---|
| In re Patent Application of: | ) | Examiner: | Herzfield, Nathaniel |
| **John Verhoff** | ) | Art Unit: | 3762 |
| Serial No.: **16/374,393** | ) | Attorney Docket No.: | **Verhoff2019.0002** |
| For: **SEDIMENT BUSTER FOR WATER CONTAINER FLUSHING SYSTEM INCLUDING SEDIMENT SEPARATOR AND ASSOCIATED METHODS** | ) | Confirmation No.: | **1073** |

## RESPONSE TO OFFICE ACTION

May 3, 2021

U.S. Patent and Trademark Office
**E-FILING**
Randolph Building
401 Dulany Street
Alexandria, VA 22314

Sir:

In response to the Office Action dated February 2, 2021, Applicant submits the following:

A **Listing of the Claims** which begins on page 2 of this paper; and

**Remarks/Arguments** which begin on page 4 of this paper.

In re Patent Application of:
**John Verhoff**
Serial No.: **16/374,393**
Filed: April 3, 2019
______________________/

**Claims**

This listing of claims replaces all prior versions, and listings, of claims in the application:

Listing of Claims

1. (Currently amended) A sediment buster tool for water heater draining, the water heater including a tank that holds heated water under pressure, the sediment buster tool comprising:

a main body defining a conduit and configured to be coupled to a drain outlet of [[a]] the tank of the water heater and configured to transport a gas into the drain outlet to break up hard sediment accumulated at the drain outlet inside the tank;

a first connector, comprising an internally threaded and rotatable female connector, at an end of the main body and configured to be coupled to an externally threaded drain port at the drain outlet of the tank;

a second connector at an opposite end of the main body;

an inlet valve positioned on the main body and configured to receive the gas to be sent into the drain outlet via the conduit and the first connector;

a shut-off valve positioned on the main body between the inlet valve and the second connector to selectively regulate the direction of flow of the gas ~~fluid~~ from the inlet valve, within the conduit, into the drain outlet, and then into the tank while breaking up the hard sediment accumulated at the drain outlet inside the tank ~~from the inlet valve~~; and

a compressed gas cartridge coupled to the inlet valve for selectively supplying gas into the drain outlet via the conduit and the first connector.

2. (Cancelled).

3. (Cancelled).

4. (Cancelled).

5. (Cancelled).

6. (Previously presented) The sediment buster according to claim 1, wherein the main body is configured to be used as the drain port for the tank of the water heater.

7. (Cancelled).

8. (Cancelled).

9. (Cancelled).

10. (Cancelled).

11. (Cancelled).

12. (Cancelled).

13. (Cancelled).

14. (Cancelled).

15. (Cancelled).

16. (Cancelled).

17. (Cancelled).

18. (Cancelled).

19. (Cancelled).

20. (Cancelled).

In re Patent Application of:
**John Verhoff**
Serial No.: **16/374,393**
Filed: April 3, 2019
______________________/

## REMARKS/ARGUMENTS

The Office Action dated February 2, 2021 and the references cited therein have been carefully studied and reviewed. Applicant thanks the Examiner for the careful and thorough examination of the present application, for withdrawing the previous rejection in view of Applicant's response, and for the courtesy extended during the telephone interview on May 3, 2021. The arguments supporting patentability of the claimed invention are included hereinbelow.

Although the present communication may include alterations to the application or claims, or characterizations of claim scope or referenced art, Applicant is not conceding in this application that previously pending claims are not patentable over the cited references. Rather, any alterations or characterizations are being made to facilitate expeditious prosecution of this application.

For the sake of conciseness and clarity, Applicant may not have addressed every assertion or rejection made in the Office action, particularly where Applicant has presented amendments or arguments that Applicant believes renders such assertions/rejections moot. Therefore, Applicant's silence regarding any such assertions or rejections does not constitute an admission or acquiescence regarding such assertions/rejections or a waiver of any argument relating to such assertions/rejections. Applicant reserves the right to challenge later any rejection or any factual or legal assertion made by the Office in relation to the present application. Applicant's silence regarding any of the Official Notice taken by Examiner does not constituted an admission or acquiescence regarding such assertions or a waiver of any argument relating to such assertions.

Applicant reserves the right to pursue later any previously pending or other broader or narrower claims that capture any subject matter supported by the present disclosure, including subject matter found to be specifically disclaimed herein or by any prior prosecution.

Accordingly, reviewers of this or any parent, child or related prosecution history shall not reasonably infer that Applicant has made any disclaimers or disavowals of any subject matter supported by the present application.

By this amendment, independent Claim 1 is amended to include various clarifications as discussed during the telephone interview. Claims 2-5 and 7-20 are canceled.

Applicant reserves the right to pursue the claims directed to invention II or the canceled claims in a related application.

Claims 1 and 6 remain pending in the application. In view of the following representations, favorable reconsideration is respectfully requested.

The Prior Art Rejections

Independent claim 1 is rejected under 35 U.S.C. §103(a) as being unpatentable over Palmer, Nugent, Coogle and Pearson.

Patentability of the Claims

As the Examiner is aware, to establish a prima facie case of obviousness, the prior art references must teach all the claim features or Examiner must present a convincing line of reasoning as to why the artisan would have found the claimed invention to have been obvious in light of the teachings of the references. A rejection on obviousness grounds under 35 U.S.C. §103 cannot be sustained by mere conclusory statements: instead there must be some articulated reasoning with some rational underpinning to support the legal conclusion of obviousness. See M.P.E.P. § 2141 citing In re Kahn, 441 F.3d 977, 988, 78 USPQ2d 1329, 1336 (Fed. Cir. 2006), and KSR International Co. v. Teleflex Inc., 550 U.S. at 418.

Applicant contends that Claim 1 clearly defines over the cited references, and in view of the following remarks, Examiner is requested to withdraw the rejection under 35 U.S.C. §103.

Independent claim 1, as amended, is directed to a sediment buster tool for water heater draining. The water heater includes a tank that holds heated water under pressure. The sediment buster tool includes a main body defining a conduit and configured to be coupled to a drain outlet of a tank of the water heater and configured to transport a gas into the drain outlet to break up sediment accumulated at the drain outlet inside the tank. A first connector, comprising an internally threaded and rotatable female connector, at an end of the main body is configured to be coupled to an externally threaded drain port at the drain outlet of the tank, and a second connector is at an opposite end of the main body. An inlet valve is positioned on the main body and configured to receive the gas to be sent into the drain outlet via the conduit and the first connector. A shut-off valve is positioned on the main body between the inlet valve and the second connector to selectively regulate the flow of gas from the inlet valve, within the conduit, into the drain outlet, and then into the tank while breaking up the hard sediment accumulated at the drain outlet inside the tank. A compressed gas cartridge is

coupled to the inlet valve for selectively supplying gas into the drain outlet via the conduit and the first connector.

It is at least these combinations of features which are not fairly taught in the cited references and which patentably define over the cited references.

Referring to FIG. 1 of Palmer (reproduced below for convenience) "the apparatus …is a manifold 2 that is operatively placed in line with a condensate drain line, with the condensate drain line extending from a drain pan." The manifold is installed by cutting a section from a condensate drain line and gluing the manifold in place within the condensate drain line (e.g. see Col. 7, lines 51-60).




*Fig. 1*

Notably, in Palmer, the manifold 2 is integrated into an air conditioner condensate drain line. The manifold 2 is <u>not a tool</u> and is not <u>connectable and disconnectable to a water heater drain outlet,</u> as is the claimed invention. There is no compressed gas cartridge as is now claimed.

As acknowledged by the Examiner on page 3 of the Office Action, Palmer fails to disclose that the manifold is for use with a water heater drain outlet as claimed. On page 3 of the Office Action, the Examiner also acknowledged that Palmer fails to teach the use of an internally threaded rotatable connector and a compressed fluid supply.

The Nugent reference is directed to a drain hose for drainage of a water heater, the hose comprising a drainage tube for drainage of water from the water heater, and an agitator for agitating water within the drain hose. Applicant points out that the Nugent device includes an agitator (or squeeze bulb) in-line with a drain hose, and utilizes water from the drain reversed back into the drain.

There is no fluid supply in the device of Nugent, and certainly no compressed gas cartridge as is claimed.

The Coogle reference was cited to allegedly teach the use of threaded connectors connected to drain lines. Applicant emphasizes that the claimed connector is <u>an internally threaded and rotatable female connector, at an end of the main body is configured to be coupled to an externally threaded drain port at the drain outlet of the tank</u>. The claimed connector is not for installation and connection to a condensate drain line that has a section removed as in Coogle. Furthermore, the threaded connectors of Coogle are mating threads 123/193 so that a slidable tubular member 190 (FIGS. 2 and 3 of Coogle below) can extend over a drain line section. This arrangement is certainly not configured to be coupled to an externally threaded drain port of a tank, as claimed.




FIG. 2




FIG. 3

The Pearson reference was cited to allegedly teach the use of a compressed fluid supply. Again, the Pearson system is for use with a condensate drain line of a passive drain of an AC system,

and is installed within a section of the drain line. The Pearson system is not a tool and is not connectable and disconnectable to a water heater drain outlet, as is the claimed invention.

To emphasize the distinctions between the present claimed embodiment and the hypothetical combination of teachings, independent Claim 1 is now amended to recite that the water heater includes a tank that holds heated water under pressure. The sediment buster tool includes a main body defining a conduit and configured to be **coupled to a drain outlet of a tank of the water heater** and configured to **transport a gas into the drain outlet** to break up sediment accumulated at the drain outlet **inside the tank**. A first connector, comprising an **internally threaded and rotatable female connector**, at an end of the main body is configured to be coupled to an **externally threaded drain port at the drain outlet of the tank**, and a second connector is at an opposite end of the main body. An inlet valve is positioned on the main body and configured to receive the **gas to be sent into the drain outlet** via the conduit and the first connector. A shut-off valve is positioned on the main body between the inlet valve and the second connector to **selectively regulate the flow of gas from the inlet valve, within the conduit, into the drain outlet, and then into the tank while breaking up the hard sediment accumulated at the drain outlet inside the tank**.

Indeed, the portable and connectable tool of the present embodiment can be operated to selectively control the direction of the flow of gas within the housing from the compressed gas cartridge and into the tank of the water heater via the drain port. In this way, turning off the shut-off valve results in the gas being directly sent through the tool housing and out the connector to the drain port of the water heater tank, for example, as illustrated in FIGS. 2 and 4 of the present application. The gas from the compressed gas cartridge forcefully enters the drain port of the water heater to bust up the hard sediment into the tank, so that draining or circulation may be tried again.

Applicant emphasizes that each of Palmer, Coogle and Pearson are directed to passive drain arrangements of AC systems. They are each installed within a section of a condensate drain line to flush sludge or algae out of the drain line, e.g., into a sewer, so that a drain pan may passively drain condensation. There is no teaching that such devices could be used at the final outlet or discharge end of a drain port for a water heater tank, much less any teaching that the devices would be effective to break up hard sediment by sending compressed gas back into the tank of a water heater which holds heated water under pressure. Indeed, the passive drain pans of the cited references cannot be

fairly equated with the water heater tank that holds heated water under pressure with minerals accumulating at a bottom thereof.

Additionally, the threaded connector of Coogle, even if obvious to combine with Palmer as in the Examiner's rejection, would still not meet the features as claimed.

Thus, Applicant maintains that none of the references to Palmer, Nugent, Coogle and Pearson teach that a first connector comprises an internally threaded and rotatable female connector, at an end of the main body to be coupled to an externally threaded drain port at the drain outlet of the tank, or a compressed gas cartridge being coupled to the inlet valve and selectively regulating the flow of gas from the inlet valve, within the conduit, into the drain outlet, and then into the tank while breaking up the hard sediment accumulated at the drain outlet inside the tank, as claimed. As such, any hypothetical combination of teachings in the cited references, even if proper, cannot result in the features of the claimed embodiment as set forth in independent Claim 1.

Accordingly, for at least the reasons presented above, Applicant maintains that there is simply no teaching in the cited references, or offered by the Examiner, to provide the combination of features as set forth in independent Claim 1, and the respective dependent Claim 6. Thus, the rejections thereof under 35 U.S.C. §103(a) should be withdrawn.

For at least the reasons presented above, it is submitted that the claims are patentable over the prior art.

## CONCLUSION

In view of the foregoing remarks, it is respectfully submitted that the present application is in condition for allowance. An early notice thereof is earnestly solicited. If, after reviewing this Response, there are any remaining informalities which need to be resolved before the application can be passed to issue, the Examiner is invited and respectfully requested to contact the undersigned by telephone to resolve such informalities.

Respectfully submitted,

*Paul Ditmyer*

PAUL J. DITMYER
Reg. No. 40,455
Attorney for Applicant
Tel: 407-443-3603

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

# NOTICE OF ALLOWANCE AND FEE(S) DUE

7590 05/12/2021

JOHN VERHOFF/PLUMBING NERDS
1502 RAIL HEAD BLVD
NAPPLES, FL 34110

| EXAMINER | |
|---|---|
| HERZFELD, NATHANIEL | |
| ART UNIT | PAPER NUMBER |
| 3762 | |

DATE MAILED: 05/12/2021

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 16/374,393 | 04/03/2019 | John Verhoff | verhoff2019.0002 | 1073 |

TITLE OF INVENTION: SEDIMENT BUSTER FOR WATER CONTAINER FLUSHING SYSTEM INCLUDING SEDIMENT SEPARATOR, AND ASSOCIATED METHODS

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | SMALL | $600 | $0.00 | $0.00 | $600 | 08/12/2021 |

**THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT. PROSECUTION ON THE MERITS IS CLOSED. THIS NOTICE OF ALLOWANCE IS NOT A GRANT OF PATENT RIGHTS. THIS APPLICATION IS SUBJECT TO WITHDRAWAL FROM ISSUE AT THE INITIATIVE OF THE OFFICE OR UPON PETITION BY THE APPLICANT. SEE 37 CFR 1.313 AND MPEP 1308.**

**THE ISSUE FEE AND PUBLICATION FEE (IF REQUIRED) MUST BE PAID WITHIN THREE MONTHS FROM THE MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED. THIS STATUTORY PERIOD CANNOT BE EXTENDED. SEE 35 U.S.C. 151. THE ISSUE FEE DUE INDICATED ABOVE DOES NOT REFLECT A CREDIT FOR ANY PREVIOUSLY PAID ISSUE FEE IN THIS APPLICATION. IF AN ISSUE FEE HAS PREVIOUSLY BEEN PAID IN THIS APPLICATION (AS SHOWN ABOVE), THE RETURN OF PART B OF THIS FORM WILL BE CONSIDERED A REQUEST TO REAPPLY THE PREVIOUSLY PAID ISSUE FEE TOWARD THE ISSUE FEE NOW DUE.**

**HOW TO REPLY TO THIS NOTICE:**

I. Review the ENTITY STATUS shown above. If the ENTITY STATUS is shown as SMALL or MICRO, verify whether entitlement to that entity status still applies.

If the ENTITY STATUS is the same as shown above, pay the TOTAL FEE(S) DUE shown above.

If the ENTITY STATUS is changed from that shown above, on PART B - FEE(S) TRANSMITTAL, complete section number 5 titled "Change in Entity Status (from status indicated above)".

For purposes of this notice, small entity fees are 1/2 the amount of undiscounted fees, and micro entity fees are 1/2 the amount of small entity fees.

II. PART B - FEE(S) TRANSMITTAL, or its equivalent, must be completed and returned to the United States Patent and Trademark Office (USPTO) with your ISSUE FEE and PUBLICATION FEE (if required). If you are charging the fee(s) to your deposit account, section "4b" of Part B - Fee(s) Transmittal should be completed and an extra copy of the form should be submitted. If an equivalent of Part B is filed, a request to reapply a previously paid issue fee must be clearly made, and delays in processing may occur due to the difficulty in recognizing the paper as an equivalent of Part B.

III. All communications regarding this application must give the application number. Please direct all communications prior to issuance to Mail Stop ISSUE FEE unless advised to the contrary.

**IMPORTANT REMINDER: Maintenance fees are due in utility patents issuing on applications filed on or after Dec. 12, 1980. It is patentee's responsibility to ensure timely payment of maintenance fees when due. More information is available at www.uspto.gov/PatentMaintenanceFees.**

# PART B - FEE(S) TRANSMITTAL

Complete and send this form, together with applicable fee(s), by mail or fax, or via EFS-Web.

By mail, send to: Mail Stop ISSUE FEE
Commissioner for Patents
P.O. Box 1450
Alexandria, Virginia 22313-1450

By fax, send to: (571)-273-2885

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

7590 05/12/2021

JOHN VERHOFF/PLUMBING NERDS
1502 RAIL HEAD BLVD
NAPLES, FL 34110

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**

I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being transmitted to the USPTO via EFS-Web or by facsimile to (571) 273-2885, on the date below.

| |
|---|
| (Typed or printed name) |
| (Signature) |
| (Date) |

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 16/374,393 | 04/03/2019 | John Verhoff | verhoff2019.0002 | 1073 |

TITLE OF INVENTION: SEDIMENT BUSTER FOR WATER CONTAINER FLUSHING SYSTEM INCLUDING SEDIMENT SEPARATOR, AND ASSOCIATED METHODS

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | SMALL | $600 | $0.00 | $0.00 | $600 | 08/12/2021 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| HERZFELD, NATHANIEL | 3762 | 122-159000 |

1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).

❑ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.

❑ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-09 or more recent) attached. **Use of a Customer Number is required.**

2. For printing on the patent front page, list

(1) The names of up to 3 registered patent attorneys or agents OR, alternatively,

(2) The name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1________________________

2________________________

3________________________

3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document must have been previously recorded, or filed for recordation, as set forth in 37 CFR 3.11 and 37 CFR 3.81(a). Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE

(B) RESIDENCE: (CITY and STATE OR COUNTRY)

Please check the appropriate assignee category or categories (will not be printed on the patent) : ❑ Individual ❑ Corporation or other private group entity ❑ Government

4a. Fees submitted: ❑Issue Fee ❑Publication Fee (if required) ❑Advance Order - # of Copies ____________________

4b. Method of Payment: *(Please first reapply any previously paid fee shown above)*

❑ Electronic Payment via EFS-Web ❑ Enclosed check ❑ Non-electronic payment by credit card (Attach form PTO-2038)

❑ The Director is hereby authorized to charge the required fee(s), any deficiency, or credit any overpayment to Deposit Account No. __________

5. **Change in Entity Status** (from status indicated above)

❑ Applicant certifying micro entity status. See 37 CFR 1.29

❑ Applicant asserting small entity status. See 37 CFR 1.27

❑ Applicant changing to regular undiscounted fee status.

NOTE: Absent a valid certification of Micro Entity Status (see forms PTO/SB/15A and 15B), issue fee payment in the micro entity amount will not be accepted at the risk of application abandonment.
NOTE: If the application was previously under micro entity status, checking this box will be taken to be a notification of loss of entitlement to micro entity status.
NOTE: Checking this box will be taken to be a notification of loss of entitlement to small or micro entity status, as applicable.

NOTE: This form must be signed in accordance with 37 CFR 1.31 and 1.33. See 37 CFR 1.4 for signature requirements and certifications.

Authorized Signature ________________________ Date ________________________

Typed or printed name ________________________ Registration No. ________________________



PTOL-85 Part B (08-18) Approved for use through 01/31/2020 OMB 0651-0033 U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 16/374,393 | 04/03/2019 | John Verhoff | verhoff2019.0002 | 1073 |

7590 05/12/2021

JOHN VERHOFF/PLUMBING NERDS
1502 RAIL HEAD BLVD
NAPPLES, FL 34110

| EXAMINER | |
|---|---|
| HERZFELD, NATHANIEL | |
| ART UNIT | PAPER NUMBER |
| 3762 | |

DATE MAILED: 05/12/2021

**Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)**
(Applications filed on or after May 29, 2000)

The Office has discontinued providing a Patent Term Adjustment (PTA) calculation with the Notice of Allowance.

Section 1(h)(2) of the AIA Technical Corrections Act amended 35 U.S.C. 154(b)(3)(B)(i) to eliminate the requirement that the Office provide a patent term adjustment determination with the notice of allowance. See Revisions to Patent Term Adjustment, 78 Fed. Reg. 19416, 19417 (Apr. 1, 2013). Therefore, the Office is no longer providing an initial patent term adjustment determination with the notice of allowance. The Office will continue to provide a patent term adjustment determination with the Issue Notification Letter that is mailed to applicant approximately three weeks prior to the issue date of the patent, and will include the patent term adjustment on the patent. Any request for reconsideration of the patent term adjustment determination (or reinstatement of patent term adjustment) should follow the process outlined in 37 CFR 1.705.

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Customer Service Center of the Office of Patent Publication at 1-(888)-786-0101 or (571)-272-4200.

## OMB Clearance and PRA Burden Statement for PTOL-85 Part B

The Paperwork Reduction Act (PRA) of 1995 requires Federal agencies to obtain Office of Management and Budget approval before requesting most types of information from the public. When OMB approves an agency request to collect information from the public, OMB (i) provides a valid OMB Control Number and expiration date for the agency to display on the instrument that will be used to collect the information and (ii) requires the agency to inform the public about the OMB Control Number's legal significance in accordance with 5 CFR 1320.5(b).

The information collected by PTOL-85 Part B is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 30 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450. Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## Privacy Act Statement

**The Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

| *Notice of Allowability* | **Application No.**<br>16/374,393 | **Applicant(s)**<br>Verhoff, John | |
|---|---|---|---|
| | **Examiner**<br>NATHANIEL HERZFELD | **Art Unit**<br>3762 | **AIA (FITF) Status**<br>Yes |

***-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address--***

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308.

1.☑ This communication is responsive to the after-final filed 5/3/2021.
☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on ______.

2.☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on ______; the restriction requirement and election have been incorporated into this action.

3.☑ The allowed claim(s) is/are 1 and 6 . As a result of the allowed claim(s), you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see **http://www.uspto.gov/patents/init_events/pph/index.jsp** or send an inquiry to **PPHfeedback@uspto.gov.**

4.☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

**Certified copies:**

a) ☐All b) ☐ Some *c) ☐ None of the:

1. ☐ Certified copies of the priority documents have been received.
2. ☐ Certified copies of the priority documents have been received in Application No. ______ .
3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

* Certified copies not received: ______ .

Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file a reply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application.
**THIS THREE-MONTH PERIOD IS NOT EXTENDABLE.**

5.☐ CORRECTED DRAWINGS (as "replacement sheets") must be submitted.
☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of Paper No./Mail Date ______ .

**Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the front (not the back) of each sheet. Replacement sheet(s) should be labeled as such in the header according to 37 CFR 1.121(d).**

6.☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

**Attachment(s)**

1.☐ Notice of References Cited (PTO-892)
2.☐ Information Disclosure Statements (PTO/SB/08), Paper No./Mail Date ______.
3.☐ Examiner's Comment Regarding Requirement for Deposit of Biological Material ______.
4.☑ Interview Summary (PTO-413), Paper No./Mail Date. ______.
5. ☐ Examiner's Amendment/Comment
6. ☑ Examiner's Statement of Reasons for Allowance
7. ☐ Other ______.

/NATHANIEL HERZFELD/
Primary Examiner, Art Unit 3762

## DETAILED ACTION

### *Notice of Pre-AIA or AIA Status*

The present application, filed on or after March 16, 2013, is being examined under the first inventor to file provisions of the AIA.

### *Allowable Subject Matter*

Claims 1 and 6 are allowed.

The following is an examiner's statement of reasons for allowance: the examiner is persuaded by applicant's arguments, specifically those on the bottom of page 8 in the response.

Any comments considered necessary by applicant must be submitted no later than the payment of the issue fee and, to avoid processing delays, should preferably accompany the issue fee. Such submissions should be clearly labeled "Comments on Statement of Reasons for Allowance."

Any inquiry concerning this communication or earlier communications from the examiner should be directed to NATHANIEL HERZFELD whose telephone number is (571)272-5899. The examiner can normally be reached on Monday-Friday 8-5 EST.

Examiner interviews are available via telephone, in-person, and video conferencing using a USPTO supplied web-based collaboration tool. To schedule an interview, applicant is encouraged to use the USPTO Automated Interview Request (AIR) at http://www.uspto.gov/interviewpractice.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, Steve McAllister can be reached on 571-272-6785. The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

Information regarding the status of an application may be obtained from the Patent Application Information Retrieval (PAIR) system. Status information for published applications may be obtained from either Private PAIR or Public PAIR. Status information for unpublished applications is available through Private PAIR only. For more information about the PAIR system, see https://ppair-my.uspto.gov/pair/PrivatePair. Should you have questions on access to the Private PAIR system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a USPTO Customer Service Representative or access to the automated information system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

NATHANIEL HERZFELD
Primary Examiner
Art Unit 3762

/NATHANIEL HERZFELD/
Primary Examiner, Art Unit 3762