**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

CASE NO. 26-cv-62027-KUNTZ/Strauss

IMPORT GLOBAL, LLC,

Plaintiff,

v.

SEDIMENT BUSTER, LLC, PLUMBING NERDS MFG, LLC, and JOHN VERHOFF, individually,

Defendants.
_______________________________________/

**PLAINTIFF IMPORT GLOBAL, LLC'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT [ECF NO. 26] AND REQUEST FOR JUDICIAL NOTICE**

Plaintiff Import Global, LLC ("Import Global") responds in opposition to the Motion to Dismiss Plaintiff's First Amended Complaint (ECF No. 26) (the "Motion") filed by Defendants Sediment Buster, LLC ("Sediment Buster"), Plumbing Nerds MFG, LLC ("Plumbing Nerds"), and John Verhoff ("Verhoff") (collectively, "Defendants"). Import Global also requests that the Court take judicial notice of a filing Sediment Buster made with the United States Patent and Trademark Office ("USPTO") on October 21, 2026. The Motion should be denied.

## I. INTRODUCTION

Every claim of U.S. Patent No. 11,084,044 (the "'044 Patent") requires "a compressed gas cartridge coupled to the inlet valve." ECF No. 25 ("FAC") ¶¶ 2, 43-44. Defendants sell their tool without one, in a box that says "Works with any air pump" and pictures a hand pump. The words "compressed gas," "cartridge," and "CO2" appear nowhere on the box. FAC ¶¶ 66-67; ECF No. 25-4 at 2-5. Defendants' own instructions, until they were replaced after Import Global's notices,

told the buyer to "attach your air pump" and mentioned $CO_2$ only as something to use "at your own risk." FAC ¶¶ 70, 78, 112. The tool carries a pressure limit of 80 psi, less than one-tenth the pressure of the $CO_2$ in a compressed gas cartridge. FAC ¶ 80. Defendants nonetheless mark the box with the '044 Patent number and mold into the tool itself "PAT. US20190283037A1," the number of a publication for an application that stopped being pending more than five years ago. FAC ¶¶ 41, 67, 69, 108.

Import Global told Defendants in writing, three times, that the article lacks the cartridge and is not patented. FAC ¶¶ 56-57, 59, 62, 84. Defendants then rewrote their Amazon listing and their website to say the tool is patented "when coupled with" or "for use with" a compressed gas cartridge. FAC ¶¶ 76-77. They did not change the marking on the box or the tool. FAC ¶¶ 8, 69, 75, 83, 112, 114. A unit bought at retail on October 20, 2026, more than eight months after the January 30, 2026 notice, came in a box with the same patent mark and the same "Works with any air pump." FAC ¶¶ 68, 75.

The Motion does not mention what the box says, the pressure limit, or the molded legend. It argues instead that *Amsted Industries Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178 (Fed. Cir. 1994), makes it lawful to mark a component of a patented combination with the patent number. *Amsted* does not hold that. It was a damages case under 35 U.S.C. § 287 about a patentee that sold center plates to rail car builders for assembly into the patented combination, together with drawings showing how to assemble it. And in the sentence immediately after the one the Motion quotes, the Federal Circuit explained how such a component could lawfully be marked: "A marking such as 'for use under U.S. X,XXX,XXX' would have sufficed." *Id.* at 185. Defendants' box carries no such qualification.

The Motion's factual premise is that the tool is "made for use with a compressed gas cartridge." Mot. at 3. The listing the Motion quotes on the same page describes something else: a tool that "adapts to ANY standard air source including CO2 gas cartridge, air compressor, or hand / bicycle pump (sold separately)." *Id.*

Defendants' factual premise is also contradicted by what Sediment Buster itself has told a federal agency. Nine days before Import Global filed the FAC, Sediment Buster told the USPTO that its device "is not powered by compressed gas," that an external source of gas "may be connected to the device when the user elects to use the agitation feature," and that the valve "does not require compressed air or gas to operate its drain-valve function." Ex. 1 at 13-14. Defendants cannot obtain dismissal on a factual premise that is not in the FAC and that Sediment Buster's own agency filing shows to be, at a minimum, disputed.

The remaining arguments misread the FAC. Count III does not plead the July 2026 submission to Amazon's Patent Evaluation Express ("APEX") program as an advertisement. Count IV does not allege that Sediment Buster alone made the Amazon submissions. It alleges that they were made in the name under which Plumbing Nerds itself does business, and it states the facts on which that allegation rests.

## II. BACKGROUND

**The parties.** Sediment Buster is the recorded owner of the '044 Patent. FAC ¶ 11. Plumbing Nerds makes, packages, and sells the Sediment Buster tool, identifies itself on the package as "Plumbing Nerds MFG LLC, DBA Sediment Buster®," and is the Amazon seller of record for the Sediment Buster storefront. FAC ¶¶ 12-13, 15, 109. Verhoff is the named inventor of the '044 Patent, identifies himself as a co-owner of Sediment Buster, and is listed in Florida's corporate records, with Joel Sprecher, as a manager of both companies. FAC ¶¶ 11-12, 21.

**The cartridge limitation.** The ’044 Patent has two claims. Claim 1, the only independent claim, requires “a compressed gas cartridge coupled to the inlet valve for selectively supplying gas into the drain outlet via the conduit and the first connector.” FAC ¶¶ 2, 42-44. That language was added by amendment during prosecution. The examiner rejected claims reciting a generic “fluid supply device” over prior art teaching pumps and compressed-fluid supplies, finding those sources to be “art equivalents well known throughout the art to be interchangeable.” FAC ¶¶ 45-48. The applicant, Verhoff, responded by replacing “fluid” with “gas,” replacing “fluid supply device” with “compressed gas cartridge,” and cancelling the dependent claims that recited “a fluid pump” and “a compressed fluid supply.” FAC ¶¶ 21, 48, 55. He then distinguished every applied reference on the cartridge. FAC ¶¶ 49, 52.

**The article Defendants sell.** Defendants sell a standalone tool, Part # SEDBUS-V1-B. The package contents are “Sediment Buster®, black gasket, QR code Instructions & Videos.” There is no cartridge. FAC ¶ 66; ECF No. 25-4 at 2-3. The back panel bears “Pat: US 11,084,044 B2,” states “Works with any air pump,” and shows a hand pump labeled “Use any air pump” connected to the tool. The words “compressed gas,” “cartridge,” and “CO2” appear nowhere on the package. FAC ¶ 67; ECF No. 25-4 at 2-5. An earlier retail box for the product called it “A patented tool designed to flush, clean & drain water heaters with ease!” and also said “Works with any air pump.” FAC ¶ 75; ECF No. 25-4 at 6. The package directs the buyer to “www.sedimentbuster.com/instructions” and to “SCAN FOR INSTRUCTIONS & VIDEOS.” FAC ¶ 67; ECF No. 25-4 at 4. Until Defendants replaced them, which they had done by May 18, 2026, the instructions published at that address told the buyer to “attach your air pump,” suggested “Use an air compressor,” and mentioned $CO_2$ only in the warning “Use air compressors or $CO_2$ compressors at your own risk.” FAC ¶¶ 70, 78. Sediment Buster’s registered manual lists what the user needs as “Bicycle or Hand

Pump (Air Compressor or CO2 at your own risk).” FAC ¶ 71. The package recommends 80 psi, the instructions said “Do not exceed 80 PSI,” and the tool itself is molded “MAX 80 PSI.” FAC ¶¶ 70, 80; ECF No. 25-4 at 2, 7, 11. The tool’s clear body is molded “PAT. US20190283037A1.” FAC ¶ 69; ECF No. 25-4 at 7.

**Notice and the post-notice changes.** Import Global told Defendants in writing, three times between November 2025 and January 2026, that the article lacks the cartridge and is not patented. FAC ¶¶ 56-57, 59, 62, 84. Defendants then rewrote their Amazon listing to say the tool is patented “when coupled with Compressed Gas Cartridge (sold separately),” rewrote their FAQ page to say the valve is “patented for use with a compressed gas cartridge,” and revised their online manual to recommend a cartridge. FAC ¶¶ 8, 76-78. They did not change the marking on the box or the tool. FAC ¶¶ 8, 69, 75, 83, 112, 114.

**Sediment Buster’s statements to the USPTO.** On October 21, 2026, Sediment Buster, through counsel, responded to an office action in its application to register AIR FLUSH for goods identified as “[p]lumbing fittings, namely, manually operated device for controlling the injection of fluid into a water heater drain outlet.” Ex. 1 at 2, 5, 11. Sediment Buster’s certificate of registration for the mark SEDIMENT BUSTER identifies its goods in the same words. Ex. 2 at 2. The response describes the device as one that “includes a gas-injection feature that permits a user to introduce gas into a water heater tank through or in connection with the water heater drain opening.” Ex. 1 at 13. In answering the examiner’s questions about the goods, Sediment Buster stated:

> “The device itself is manually operated and is not powered by compressed gas. Rather, an external source of gas may be connected to the device when the user elects to use the agitation feature.” Ex. 1 at 13.
>
> “Depending upon the user’s external gas source, that gas may be air supplied under pressure. The valve itself, however, is manually

> operated and does not require compressed air or gas to operate its drain-valve function." Ex. 1 at 14.
>
> "Applicant's goods are water-heater drain valves or drain valve assemblies." Ex. 1 at 14.

## III. LEGAL STANDARD

A complaint survives a Rule 12(b)(6) motion if it pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court accepts the well-pleaded facts as true. Exhibits override allegations only "when the exhibits contradict the general and conclusory allegations of the pleading." *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007). False marking claims must plead "the specific who, what, when, where, and how" of the alleged fraud. *Juniper Networks, Inc. v. Shipley*, 643 F.3d 1346, 1350 (Fed. Cir. 2011) (quoting *In re BP Lubricants USA Inc.*, 637 F.3d 1307, 1309 (Fed. Cir. 2011) (quoting *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1327 (Fed. Cir. 2009))). Even under Rule 9(b), "[p]leading on 'information and belief' is permitted . . . when essential information lies uniquely within another party's control," so long as the pleading "sets forth the specific facts upon which the belief is reasonably based." *Exergen*, 575 F.3d at 1330. Under Rule 8, "[p]leading on information in belief is still permissible where, as here, the facts are 'peculiarly within the possession and control of the defendant.'" *Belik v. Carlson Travel Group, Inc.*, 864 F. Supp. 2d 1302, 1311 (S.D. Fla. 2011) (quoting *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010)).

## IV. REQUEST FOR JUDICIAL NOTICE

Import Global asks the Court to take judicial notice of Sediment Buster's October 21, 2026 Response to Office Action in USPTO Application Serial No. 99608924, as maintained in the USPTO's Trademark Status and Document Retrieval ("TSDR") system, a copy of which is attached as Exhibit 1. Import Global also asks the Court to take judicial notice of the certificate of

registration for U.S. Trademark Registration No. 7,394,935, attached as Exhibit 2, which identifies the goods for which Sediment Buster's SEDIMENT BUSTER mark is registered.

The Court may take judicial notice of a fact that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned," Fed. R. Evid. 201(b)(2), "at any stage of the proceeding," Fed. R. Evid. 201(d), and "must" do so when a party requests it and supplies the necessary information, Fed. R. Evid. 201(c)(2). The Eleventh Circuit permits courts ruling on a Rule 12(b)(6) motion to take judicial notice of public documents filed with the SEC "for the purpose of determining what statements the documents contain and not to prove the truth of the documents' contents," without converting the motion. *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir. 1999). The same reasoning applies to the USPTO's public record of an applicant's own filings. The TSDR file is the USPTO's official record of what an applicant submitted. Its accuracy as a record of what Sediment Buster told the agency cannot reasonably be questioned, and the FAC already relies on Sediment Buster's TSDR filings in another Sediment Buster application. FAC ¶ 40.

Import Global offers Exhibit 1 for exactly the purpose *Bryant* permits: to establish what Sediment Buster said, and when. The point is not that Sediment Buster's description of its own product is true. The point is that Sediment Buster has described its goods to a federal agency in terms that are difficult to square with the factual premise of the Motion. That shows, at a minimum, that the premise is disputed, which is all Import Global needs at this stage.

## V. ARGUMENT

### A. Count II States a Claim for False Marking Against All Defendants.

#### 1. The article Defendants sell is unpatented.

Section 292(a) reaches whoever "marks upon, or affixes to, or uses in advertising in connection with any unpatented article" the word "patent" or any number importing that the article

is patented, for the purpose of deceiving the public. An article is "unpatented" when it "is not covered by at least one claim of each patent with which the article is marked." *Clontech Labs., Inc. v. Invitrogen Corp.*, 406 F.3d 1347, 1352 (Fed. Cir. 2005).

Start with what Defendants marked. The package lists everything inside: "Contents: Sediment Buster®, black gasket, QR code Instructions & Videos." ECF No. 25-4 at 2; FAC ¶ 66. There is no cartridge on that list. The package says "Works with any air pump," its one diagram shows a hand pump labeled "Use any air pump," and the words "cartridge," "CO2," and "compressed gas" appear nowhere on it. ECF No. 25-4 at 2; FAC ¶ 67. The marking "Pat: US 11,084,044 B2" appears in a short list between "Designed, Assembled with foreign parts, and Packaged in FL USA" and the name of the company responsible for the product, as one more statement about the product in the package. ECF No. 25-4 at 2; FAC ¶ 13. An earlier retail box for the product said it in words: "A patented tool designed to flush, clean & drain water heaters with ease!" ECF No. 25-4 at 6; FAC ¶ 75. Each package tells the buyer that the tool inside is patented and that any air pump will operate it.

*Clontech*'s definition resolves the first element at the pleading stage. Both claims of the '044 Patent require a compressed gas cartridge. FAC ¶¶ 43-44. The article Defendants package and sell has none. FAC ¶¶ 66-67, 108. It is therefore not covered by any claim, and it is unpatented. The Motion does not argue otherwise.[1] Its only answer is that Defendants sell the article as a component of the patented combination. That answer fails for the reasons that follow.

[1]Defendants "assume arguendo the Complaint's allegations as to the '044 Patent" for purposes of the Motion. Mot. at 3 n.1. They do not argue that any claim of the '044 Patent reads on the article as sold.

**2. *Amsted* approved qualified marking. Defendants used unqualified marking.**

The Motion quotes *Amsted* for the proposition that marking a component sold for assembly into a patented combination does not violate § 292. Mot. at 4. It omits the next sentence. In full, the passage reads:

> Amsted argues that had it marked its center plate it would have violated 35 U.S.C. § 292 which prohibits the marking of an unpatented article. This is not persuasive. A marking such as "for use under U.S. X,XXX,XXX" would have sufficed. Moreover, Amsted could have sold its plates with a requirement that its purchaser-licensees mark the patented products "licensed under U.S. X,XXX,XXX."

24 F.3d at 185. *Amsted* thus tells a patentee how to give notice on a component without falsely marking it: say that the component is for use under the patent. It does not authorize marking the component as though the component itself were patented.

Defendants did the latter. The box says "Pat: US 11,084,044 B2," and the tool says "PAT. US20190283037A1." Neither says "for use under," "licensed under," or anything about a cartridge. FAC ¶¶ 67, 69, 75, 112; ECF No. 25-4 at 2, 6, 7. Defendants plainly understood the difference. After Import Global's notices, they wrote qualified statements on their Amazon listing and FAQ page ("patented for use with a compressed gas cartridge") while leaving the unqualified marks on the box and the tool. FAC ¶¶ 76-77, 83, 114. A unit bought at retail on October 20, 2026, more than eight months after the January 30, 2026 notice, came in a box with the same unqualified mark. FAC ¶¶ 68, 75. Count II challenges those unqualified marks and Defendants' advertising of the standalone tool as itself patented, not a truthful statement that the patent covers the tool when combined with a cartridge. FAC ¶¶ 86, 108-113; *see also* FAC ¶ 126.

This reading does not expose honest component sellers to liability. A seller that marks a component "for use under" its patent has done what *Amsted* approved. A seller that marks in a

good-faith belief that the marking is proper lacks the "purpose of deceiving the public" that § 292(a) requires, an element the Motion does not contest. Import Global's claim is narrower. Defendants marked a standalone tool as itself patented, told buyers that any air pump would operate it, and kept that marking after three written notices and after qualifying their own statements online. FAC ¶¶ 67, 84, 112, 114.

### 3. *Amsted* depended on facts that are the opposite of the facts pleaded here.

*Amsted* affirmed the district court's ruling that the purchasers of Amsted's center plates were implied licensees, "making or selling [the] patented article for or under [Amsted]" within the meaning of § 287. 24 F.3d at 184-85. The court reached that conclusion on a record that "reveal[ed] that Amsted manufactured and sold its center plates for use in the patented combination, and that Amsted provided its customers with installation drawings which instruct how to assemble the center plate, along with other components, according to the teachings of the patent." *Id.* at 185. "There is no dispute," the court noted, "that Amsted impliedly authorized its customers to make, use, and sell the patented article." *Id.*

Those facts mattered. The sale of an unpatented article implies such a license only where the article has no noninfringing use. *Met-Coil Sys. Corp. v. Korners Unlimited, Inc.*, 803 F.2d 684, 686 (Fed. Cir. 1986) ("First, the equipment involved must have no noninfringing uses."); *Bandag, Inc. v. Al Bolser's Tire Stores, Inc.*, 750 F.2d 903, 924 (Fed. Cir. 1984) ("[N]o license can be implied, where as here, the equipment involved has other noninfringing uses . . . .").

The FAC pleads the opposite of *Amsted*'s facts. Defendants do not give purchasers drawings showing them how to build the claimed combination. They give them a box that says "Works with any air pump," a picture of a hand pump, and a direction to scan for instructions that, until Defendants revised them after Import Global's notices, told the buyer to attach an air pump or

use an air compressor. FAC ¶¶ 67, 70, 78, 112. In those instructions $CO_2$ appeared only as something to use "at your own risk," and the 80 psi limit on the box and in the instructions directs purchasers away from coupling an unregulated $CO_2$ cartridge to the inlet valve. FAC ¶¶ 70-71, 80. $CO_2$ in a cartridge is held at approximately 837 psi at room temperature, more than ten times that limit. FAC ¶ 80. Nor does the revision change this. The revised online manual recommends a cartridge but does not require one; it says the tool "[a]ccepts any standard pneumatic inflators" and that the cartridge is "sold separately." FAC ¶¶ 78, 83; ECF No. 25-14 at 2-3. The box still says "Works with any air pump," and Defendants began recommending a cartridge only after Import Global's notices. FAC ¶¶ 67, 83, 112. The pump-based use Defendants instruct is noninfringing because it lacks the cartridge. It is also the very subject matter the applicant gave up to obtain the patent. The applicant cancelled the claims reciting "a fluid pump" and "a compressed fluid supply" and narrowed claim 1 to the cartridge after the examiner found fluid pumps and compressed fluid supplies to be interchangeable in the prior art. FAC ¶¶ 47-48, 55. A patentee who surrendered pumps to get the patent cannot mark a pump-driven tool as patented on the theory that some buyer, against the maker's own warning, might attach a cartridge.

**4. Defendants' contrary characterization of their product raises, at most, a fact dispute.**

The Motion asserts that purchasers "have always been instructed to use an air source which may include a CO2 gas cartridge." Mot. at 3. The exhibits do not say that. The manual Defendants cite reads "Bicycle or Hand Pump (Air Compressor or CO2 at your own risk)." ECF No. 25-17 at 5; FAC ¶ 71. It says nothing about a gas cartridge; the Motion supplies that phrase ("as in a 'CO2 gas cartridge'") from a different document. Mot. at 3. The "sold separately" language the Motion quotes comes from Amazon listings the FAC alleges Defendants had rewritten by February 2026

and again by July 2026, after Import Global's notices. FAC ¶¶ 76, 79, 112.[2] Nothing in the pre-notice record recommends a cartridge or ties the patent to one, and nothing on either box in the record does. FAC ¶¶ 67, 75, 112. The post-notice listings do not help the Motion either. As the Motion itself quotes one of them, the tool "adapts to ANY standard air source including CO2 gas cartridge, air compressor, or hand / bicycle pump (sold separately)." Mot. at 3; *see* FAC ¶ 79; ECF No. 25-15 at 2. The October 2026 listing, which the Motion cites for the benefits of the invention, pictures the tool connected to a floor-standing hand pump. Mot. at 1; ECF No. 25-16 at 5; FAC ¶ 80. The FAC alleges that none of Defendants' post-notice listings or pages teaches that a cartridge is required to use the product, that Defendants do not include a cartridge with it, and, on information and belief, that Defendants do not sell a cartridge or a cartridge adapter for it. FAC ¶ 82. A tool that its maker advertises as adapting to any standard air source has the noninfringing use described in Part V.A.3. Because the exhibits are consistent with the FAC, they do not override it. *Griffin*, 496 F.3d at 1206.

Sediment Buster's own statements to the USPTO confirm that the Motion's premise is contested. Defendants tell this Court their tool is a component "made for use with a compressed gas cartridge." Mot. at 3. Sediment Buster told the USPTO that its goods are "water-heater drain valves or drain valve assemblies," that the device "is not powered by compressed gas," that "an external source of gas may be connected to the device when the user elects to use the agitation feature," that, "[d]epending upon the user's external gas source, that gas may be air supplied under pressure," and that the valve "does not require compressed air or gas to operate its drain-valve function." Ex. 1 at 13-14. Those statements describe an optional, user-selected gas source of any kind, not a component made for use with a compressed gas cartridge. Whatever weight they ultimately carry,

[2] The Motion also cites ECF Nos. 1-10 and 1-11, exhibits to the superseded original Complaint. Mot. at 3-4. Whatever their status, the language Defendants quote from them is the same post-notice listing language pleaded in paragraphs 76 and 79 of the FAC.

they show that the characterization on which the Motion depends is not established on the face of the pleadings.

Dismissal on the basis of a dispositive legal issue is permitted when "no construction of the factual allegations will support the cause of action." Mot. at 5 (quoting *Glover v. Liggett Grp., Inc.*, 459 F.3d 1304, 1308 (11th Cir. 2006)). Here the factual allegations, the exhibits Defendants cite, and Sediment Buster's own agency filing all support the cause of action. Import Global has not pleaded itself out of court.

**5. The Motion does not address the legend molded into the tool or the website advertising.**

Count II also rests on the legend "PAT. US20190283037A1" molded into the body of the tool and, on information and belief, of every unit, a word and number importing that the article is patented. FAC ¶¶ 69, 108, 114(c). That number belongs to a pre-issuance publication, not to any patent, and the application it identifies issued in August 2021. FAC ¶¶ 41, 69. The Motion says nothing about this legend, and no reading of *Amsted* could turn a publication number into a patent. For this reason alone, Count II cannot be dismissed in its entirety. And if Defendants say the legend refers only to an application, the result is the same: § 292(a) also prohibits marking an article with any word "importing that an application for patent has been made, when no application for patent has been made, or if made, is not pending," and the application this legend identifies has not been pending since August 2021. 35 U.S.C. § 292(a); FAC ¶¶ 41, 69.

Nor does the Motion address the advertising. Section 292(a) also reaches whoever "uses in advertising in connection with any unpatented article" the word "patent" or any word or number importing that the article is patented. The FAC pleads that Defendants' website called the tool "a patented tool" and "The All-New Utility Patented Sediment Buster," advertised a "Patented Air Injection Process," and stated that the '044 Patent "claims the use of fluid (air or water) to break up,

stir, and remove sediment from a water heater tank." FAC ¶¶ 72-74, 109-111, 113. The patent has no process claim, and every claim requires a compressed gas cartridge. FAC ¶¶ 43-44, 72, 113. *Amsted* concerns what may be marked on a component. It says nothing that could make those statements true, and the Motion's only argument against Count II as a whole does not mention them. Mot. at 2-5.

**6. The Motion's quotations from two district court decisions do not help it, and the Motion does not challenge intent.**

*Douglas Press*, as the Motion quotes it, says only that the *Amsted* plaintiff could have marked its own center plate or required the rail car builders to mark the finished product. Mot. at 4. *Abacus* speaks to whether a patentee "exercises good faith in deciding to mark particular articles." Mot. at 4-5. That is the intent element, and the Motion does not argue that the FAC fails to plead it. The FAC alleges that Defendants knew the claims required a cartridge, received three written notices that the article lacked one, and then qualified their online statements while leaving the unqualified marks on the article. FAC ¶¶ 84, 114. "[T]he combination of a false statement and knowledge that the statement was false creates a rebuttable presumption of intent to deceive the public . . . ." *Pequignot v. Solo Cup Co.*, 608 F.3d 1356, 1362-63 (Fed. Cir. 2010). Whether Defendants can rebut that presumption is a question for another day. The Motion's argument against Count II as a whole does not address intent, the molded legend, or the website advertising, and Defendants may not raise new grounds for dismissal in reply. *See* S.D. Fla. L.R. 7.1(c)(1) (reply "shall be strictly limited to rebuttal of matters raised in the memorandum in opposition"); *Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1342 (11th Cir. 2005) (arguments first raised in a reply brief are not properly before a reviewing court).

### 7. Count II is pleaded with particularity as to Verhoff.

The Motion argues that the FAC does not allege that Verhoff physically marked any product. Mot. at 5. Section 292(a) is not limited to physical marking. It reaches "[w]hoever . . . uses in advertising in connection with any unpatented article" the word "patent" or a number importing that the article is patented. The FAC alleges that Verhoff used the '044 Patent number and the word "patented" in website advertising for the article, including statements that the product is "a patented tool" with a "Patented Air Injection Process" and that "John was awarded U.S. Utility Patent 11084044 B2, which claims the use of fluid (air or water) to break up, stir, and remove sediment from a water heater tank." FAC ¶¶ 22, 72-74, 111. It identifies the statements, the dates of the archived captures, the medium, and why each statement is false. FAC ¶¶ 72-74, 86, 113, 115. That is the who, what, when, where, and how. *Juniper*, 643 F.3d at 1350.

The Motion's real objection is that the FAC attributes the website statements to Verhoff on information and belief. Mot. at 5-7. *Exergen* permits exactly that where the information lies within the defendant's control and the pleading states the facts on which the belief rests. 575 F.3d at 1330. Paragraph 24 does so. Verhoff is the named inventor and the applicant on whose behalf the cartridge limitation was added. The website credits the patent to him by name and states what the patent he "was awarded" claims. In 2024 the website stated that he partnered with Joel Sprecher "to design, manufacture, and market the Sediment Buster." He manages both companies that make and sell the product and co-owns the patent's owner. And he personally signed the July 2026 APEX submission asserting the same patent against Import Global. FAC ¶¶ 21-24, 64. The FAC also pleads that Verhoff signed a change-of-address form in the application as applicant on August 26, 2020, that the correspondence address of record was "John Verhoff/Plumbing Nerds," and that the USPTO mailed the September 1, 2020 office action describing the prior-art rejection to that name

and address. FAC ¶¶ 18, 84; ECF No. 25-2 at 6, 10. How Verhoff and Sprecher divide authority within the two companies they alone manage is information within Defendants' control. FAC ¶ 24.

The ownership notice on the website does not change this. A notice that the site's content "is the property of Sediment Buster LLC" identifies who owns the content. Mot. at 6 (quoting ECF No. 25-5 at 10). It says nothing about who wrote or approved the patent statements. A company acts only through people, and the FAC pleads specific facts making Verhoff a plausible author or approver of statements about his own patent. Nor does the notice reach the package. The FAC also alleges that Verhoff authorized the patent marking on the product and its packaging, and a notice about who owns website content says nothing about who decided what is printed on the box. FAC ¶¶ 24, 111.

### B. Count III States a Claim Against Verhoff.

The Motion attacks Count III against Verhoff on two grounds: that the website content is attributable only to Sediment Buster, and that the APEX submission is not "commercial advertising or promotion." Mot. at 6-8. The second argument attacks a theory the FAC does not plead. Count III identifies the false representations at issue: (a) the unqualified patent marking on the packaging and the tool and the descriptions of the product as "a patented tool" and "The All-New Utility Patented Sediment Buster"; (b) the statement that the '044 Patent "claims the use of fluid (air or water)"; and (c) the claimed "Patented Air Injection Process." FAC ¶ 121. The APEX submission is not among them. Paragraph 124 refers to the APEX submission as evidence of Verhoff's knowledge of the claims and his personal role in the use of the patent, not as an advertisement. Whether the APEX submission satisfies the test for "commercial advertising or promotion" under *Tobinick v. Novella*, 848 F.3d 935 (11th Cir. 2017), and whether Amazon's confidentiality terms apply to it, are beside the point.

The first argument fails for the reasons stated in Part V.A.7. An individual who "actively and knowingly caused the infringement" is "personally liable" under the Lanham Act. *Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991). The FAC pleads that Verhoff authored, approved, directed, or ratified the representations in paragraph 121 and states the specific facts supporting that allegation. FAC ¶¶ 24, 124. Those representations are not "only" the website statements and the APEX submission, as the Motion says. Mot. at 6. They include the marking on the package and the tool, FAC ¶ 121, which the FAC alleges Verhoff authorized, FAC ¶ 24, and which a notice about website content does not reach. Nor does Rule 9(b) govern Count III. The Motion's own authority explains that "[i]n the Eleventh Circuit, the weight of authority holds that a Lanham Act claim for false advertising . . . need not be pleaded with specificity." *Incarcerated Entm't, LLC v. Warner Bros. Pictures*, 261 F. Supp. 3d 1220, 1226-27 (M.D. Fla. 2017) (declining "to impose a heightened pleading requirement"); *see* Mot. at 6 (citing that decision). Count III satisfies Rule 9(b) in any event. *United States ex rel. Clausen v. Laboratory Corp. of America*, 290 F.3d 1301 (11th Cir. 2002), on which the Motion relies, applied Rule 9(b) to a False Claims Act complaint and declined to relax that standard for a relator who had other "avenues for obtaining information" and offered only "conclusory statements," citing authority that "even where allegations are based on information and belief, the complaint must set forth a factual basis for such belief." *Id.* at 1314 n.25 (quoting *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997)). Paragraph 24 supplies that basis, and the facts it pleads make Verhoff's involvement in statements about his own patent, on the website of the company he co-owns and manages, more than plausible.

### C. Count IV States a Claim Against Plumbing Nerds.

Count IV alleges that Plumbing Nerds took part in the two Amazon submissions, and it says why: Plumbing Nerds is the Amazon seller of record for the Sediment Buster storefront, it does

business under the very name in which the submissions were made, and the July 2026 submission names it. FAC ¶¶ 13, 15, 17, 64, 140. The Motion asserts that paragraph 39 of the FAC alleges that Sediment Buster, and not Plumbing Nerds, submitted the January 2026 Amazon complaint and the July 2026 APEX submission. Mot. at 8. Paragraph 39 identifies the two Amazon listings (ASINs) targeted and refers to the submissions as Sediment Buster's. It does not say that Plumbing Nerds took no part in them. FAC ¶ 39. The Motion also says the allegation contradicts the FAC's exhibits, but it identifies none, and the APEX form itself lists Plumbing Nerds as an entity related to the patent owner. Mot. at 8; ECF No. 25-10 at 5. Paragraph 138 alleges that Sediment Buster interfered by making the submissions, and paragraph 140 alleges that Plumbing Nerds participated in them. Those allegations are not inconsistent. More than one defendant can take part in the same act of interference.

Paragraph 140 states the facts on which the allegation rests. Plumbing Nerds is the Amazon seller of record for the Sediment Buster storefront, the marketplace presence through which the Sediment Buster product competes with Import Global's product and in which the enforcement occurred. FAC ¶¶ 15, 140. Plumbing Nerds does business as "Sediment Buster," the very name in which both submissions were made: its own packaging identifies it as "Plumbing Nerds MFG LLC, DBA Sediment Buster®," FAC ¶ 13, and the July 2026 APEX submission itself names "Plumbing Nerds MFG LLC (licensed manufacturer, dba Sediment Buster)." FAC ¶¶ 17, 64. Before Import Global's January 30, 2026 notice, Defendants' website likewise stated that "Plumbing Nerds MFG. LLC (DBA Sediment Buster®) is the solely licensed manufacturer and producer of the Sediment Buster®, a patented tool designed to effectively flush and clean water heaters using air pressure." FAC ¶ 14; ECF No. 25-5 at 8. The Motion itself describes Plumbing Nerds as "the sole licensee for manufacture and production." Mot. at 1-2. Plumbing Nerds shares

Sediment Buster's address and its only two managers, and it received Import Global's noninfringement opinion at its own email domain before the first submission. FAC ¶¶ 12, 19-20. Which Defendant's account, personnel, and approvals were used for submissions made in a trade name the two companies share is information peculiarly within Defendants' control. *Arista*, 604 F.3d at 120. The FAC pleads Plumbing Nerds' participation plausibly.

## VI. CONCLUSION

Import Global respectfully requests that the Court take judicial notice of Exhibits 1 and 2 and deny the Motion in its entirety. Should the Court find any count deficient in any respect, Import Global respectfully requests that dismissal be without prejudice and with leave to amend.[3]

## RULE 7.1(a)(3) CERTIFICATE OF CONFERRAL

Under Local Rule 7.1(a)(3)(B), undersigned counsel certifies that he made reasonable efforts to confer with counsel for Defendants about the request for judicial notice in Part IV, but was unable to do so. At 5:58 a.m. on November 25, 2026, undersigned counsel emailed Robert Thornburg, counsel for Defendants, and copied two of his colleagues. The email attached Exhibits 1 and 2, explained that Import Global asks the Court to notice those records only for what they say and when they were filed, and asked whether Defendants oppose the request. It also asked Mr. Thornburg for a time to confer by telephone that day, as the Scheduling Order [ECF No. 23] requires. At 3:30 p.m. the same day, undersigned counsel called Mr. Thornburg and left a voicemail after receiving no response. As of filing, Defendants' counsel has not responded to the email or the call, and Import Global does not know Defendants' position on the request.

[3] The Motion does not seek dismissal with prejudice. The deadline for motions to amend pleadings is January 15, 2027. ECF No. 23 at 2.

Dated: November 25, 2026

Respectfully submitted,

/s/ Cole Carlson
Cole Carlson
LEAD TRIAL COUNSEL
Florida Bar No. 112863
CARLSON IP LAW, LLC
412 E Madison Street, Suite 821
Tampa, Florida 33602
Tel: (813) 445-5175
cole@carlsoniplaw.com

Patrick Reid
Florida Bar No. 112708
CARLSON IP LAW, LLC
412 E Madison Street, Suite 821
Tampa, Florida 33602
patrick.reid@carlsoniplaw.com

Mark Berkowitz (pro hac vice)
TARTER KRINSKY & DROGIN LLP
1350 Broadway, Floor 11
New York, New York 10018
Tel: (212) 216-1166
mberkowitz@tarterkrinsky.com

*Counsel for Plaintiff Import Global, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 25, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record, including Robert H. Thornburg (rthornburg@allendyer.com) and James R. Leahy (jleahy@allendyer.com), Allen, Dyer, Doppelt & Gilchrist, P.A., 121 Alhambra Plaza, Suite 1250, Coral Gables, Florida 33134, counsel for Defendants.

/s/ Cole Carlson
Cole Carlson